253 P.2d 337

**FRANKLIN v. FRANKLIN.**

No. 5633.

Supreme Court of Arizona.

Feb. 19, 1953.

Milton Cole, of Tucson, for appellant.

Hall, Catlin & Molloy and Russell E. Jones, of Tucson, for appellee.

STANFORD, Chief Justice.

Fred Franklin, appellee, filed a complaint for divorce in the Superior Court of Pima County against Bernice E. Franklin, appellant. The parties had been married since August 4, 1917. Appellant filed an answer to the complaint and thereafter filed a cross-complaint. The case was heard without a jury, and the appellant was granted a divorce on the basis of her cross-complaint. The lower court, in its judgment and decree, denied the appellant any alimony and attempted to make an equal distribution of the community property between appellant and appellee, and it is from this judgment and decree that appellant appeals.

Under the judgment and decree the appellant received from that property designated as community property a 1950 Plymouth automobile, one-half of the real property located on Fort Lowell Road, consisting of three dwelling units with garages and two storage buildings, all the money in the bank accounts then existing, amounting to $131; the note and mortgage given by appellant's sister, which was in the original amount of $2,100, and, in addition, the lower court declared the real property located at 125 North 3rd Avenue, Tucson, Arizona, to be her separate property. Appellee, under the same judgment and decree, received one 1951 Plymouth automobile, one-half of the real property located on Fort Lowell Road, consisting of three dwelling units with garages, and a one-half interest in a one-room building located in Gila Bend, Arizona, of the approximate value of $500.

The following are a few of the facts brought out in the evidence during the trial, and are set forth here before we take up appellant's assignments of error. Appellant and appellee purchased the real property located at 125 North 3rd Avenue, Tucson, from appellant's father, taking title in both their names. Thereafter, the mortgage on that property was paid with funds received by appellant through an inheritance, and at that time appellee executed a quitclaim deed of his interest in the property in favor of appellant. Appellant testified that during the marriage she had received $13,000 or $14,000 in rents therefrom. These funds were not kept separate from the community funds, but were com-

mingled with such funds. With community funds the property on Fort Lowell was acquired and improved, as well as the one-half interest in the building in Gila Bend.

It was brought out in the testimony that the appellant over a period of years had opened numerous bank accounts at various banking institutions in Tucson, some in her name and some in the names of her children or her grandchild, Barbara Franklin. Only one or two accounts were ever opened in the names of appellant and appellee, even though the funds deposited in these many accounts were community in nature. Appellant testified to giving or loaning money to her son, Walter Franklin, in the total approximate sum of $6,000. It appears that this was done without the knowledge or consent of appellee.

Appellee had been employed by the Southern Pacific railroad for many years until a few years ago, when he was disabled by an eye condition, at a salary not exceeding $400 per month. Since that time he has received $125 per month as disability compensation from the railroad.

The appellant has set forth six assignments of error. Four of these concern the distribution of the community property as made by the lower court, and therefore can be considered together.

Appellant alleges that the trial court erred in giving the one-half community interest in the Gila Bend property to appellee, and in dividing the property on Fort Lowell Road in the manner in which he did. It is further alleged that the trial court was in error in not considering the rentals of appellant's separate property as her sole property.

We hold that the lower court made an equitable distribution of the community property so as to do justice to both parties. It is true that appellee was given the entire community interest in the property at Gila Bend, but to offset this, the trial court gave appellant all of the interest in the note and mortgage which appellant's sister had given upon receiving a loan from the parties to this action. As for the Fort Lowell property, the income from the portion received by appellee is $175 per month, whereas, the income from appellant's interest is $165 per month.

The trial court is given broad powers in regard to the division of community property by Section 27–805, A.C.A.1939, the pertinent provisions of said section being as follows:

"On entering a decree of divorce the court shall order such division of the property of the parties as to the court shall seem just and right, according to the rights of each party and their children, without compelling either party to divest himself or herself of the title to separate property. * * *"

This leaves the question of the division of community property to the discre-

tion of the lower court. Porter v. Porter, 67 Ariz. 273, 195 P.2d 132; Schwartz v. Schwartz, 52 Ariz. 105, 79 P.2d 501, 116 A.L.R. 633.

■ There is no duty imposed upon the trial court to make an equal division of the community property, and the judgment and decree will not be disturbed in the absence of a showing of an abuse of that discretion. Patterson v. Patterson, 63 Ariz. 499, 163 P.2d 850; Tennery v. Tennery, 35 Ariz. 69, 274 P. 638, 639.

■ This court has many times expressed the rule that when separate funds are commingled with community funds, there is a burden upon the person claiming a portion thereof to be his or her separate property to prove such fact by clear and satisfactory evidence. Porter v. Porter, supra; Rundle v. Winters, 38 Ariz. 239, 298 P. 929; Lawson v. Ridgeway, 72 Ariz. 253, 233 P.2d 459.

■ Appellant made no effort to keep the income from her separate property apart from the community funds. There is no evidence in the transcript tracing any of said funds into particular pieces of property, now designated as community. The evidence does show that appellant handled substantially all the money for the family during the greater portion of the marriage, depositing appellee's salary together with the income from her separate property in various accounts. We, therefore, hold that the rents received from the separate property of appellant lost their identity as such and were properly treated as community property by the lower court.

Appellant alleged that the trial court erred in not giving her any alimony. The statute covering the power of a trial court to allow alimony to a spouse is Section 27-810, A.C.A.1939:

> "In the final decree of divorce the court may, in addition to the division of the common property of the parties, or in lieu thereof, direct the husband to pay to the wife such amounts as may be necessary for the support and maintenance of the wife, and the minor children of the parties whose custody may be awarded to the wife, as may be necessary or proper, * * *."

■ A husband should not be required to pay alimony to the wife unless the evidence shows that the alimony is necessary for the support and maintenance of the wife. Tennery v. Tennery, supra. The amount of alimony, if any, is addressed to the discretion of the trial court. Schuster v. Schuster, 42 Ariz. 190, 23 P.2d 559.

■ In view of the distribution which was made of the community property, and the income to be derived by appellant from her separate property, we hold that the lower court did not abuse its discretion in failing to provide any alimony for appellant.

■ Appellant alleges that the lower court erred in not providing in the judgment and decree for support of the grandchild by appellee. The granddaughter, Bar-

bara, was never legally adopted by the parties to this action but she was placed in their custody by a Juvenile and Domestic Court in the State of Virginia October 5, 1940, at the sole request of the appellant, and lived with them until their separation prior to the trial. The record discloses the father of the child is living and is able to provide for her support. She was living with appellant when this appeal was taken. Under these circumstances, the appellee would, during the period Barbara lived with him and his wife, stand in loco parentis to her. 67 C.J.S., Parent and Child, § 71, page 803; Dix v. Martin, 171 Mo.App. 266, 157 S.W. 133.

With regard to the duty of a grandparent to support a grandchild where the former stands in loco parentis to the latter, the law is well settled that the grandparent is obligated to provide support for the grandchild. 67 C.J.S., Parent and Child, § 73(b), page 806. This same rule applies where a stepfather has received a child into his home and treats it as his own. 67 C.J.S., Parent and Child, § 79, page 807; Estate of Harris, 16 Ariz. 1, 140 P. 825. However, in the case of State ex rel. Hardesty v. Sparks, 28 Tenn.App. 329, 190 S.W.2d 302, the Tennessee Court held that a stepfather's obligations could be "cast off at any time." See also Wood v. Wood, 166 Ga. 519, 143 S.E. 770; Magma Copper Co. v. Aldrete, 70 Ariz. 48, 216 P.2d 392.

We hold that the rule laid down in the above cases pertaining to stepfathers is equally applicable to a grandfather, hence the trial court did not err in refusing to saddle upon the appellee the future support of this child.

Judgment affirmed.

PHELPS, LA PRADE, UDALL, and WINDES, JJ., concurring.