379 P.2d 966

**Raymond A. KENNEDY, Appellant,**

**v.**

**Mary R. KENNEDY, Appellee.**

**No. 6978.**

Supreme Court of Arizona,

In Division.

March 27, 1963.

Carl W. Divelbiss, Phoenix, for appellant.

Hughes & Hughes, and Johnson & Stewart, Phoenix, for appellee.

UDALL, Vice Chief Justice.

This is a contested divorce action. A complaint was filed by the wife, charging mental and physical cruelty. The husband counterclaimed, charging adultery. A divorce was granted on the wife's complaint, a division of the property was ordered, and alimony was awarded to the wife. The husband appealed, alleging in his assignments of error that the wife was not entitled to a divorce as her evidence was uncorroborated, that an improper division of property was ordered and that excessive fees were allowed the wife's attorneys and a receiver and his attorney. He further contends that the court erred in denying his claim for divorce, and in awarding alimony to the wife.

■ The evidence, as collected in the cold pages of the record, appears to favor the husband. The occurrences charged by the wife to be instances of cruelty were of a substantial nature, although the corroboration of these occurrences, which came exclusively from the husband's testimony, was slight. The husband's evidence of adultery on the part of the wife was persuasive, and corroborated by other witnesses. The wife denied these charges on the stand, however, and from the closer vantage point of his bench the trial judge believed the wife and disbelieved the husband and his witnesses. We do not find the evidence

so overwhelmingly in favor of the husband that the findings of the trial court were unreasonable and cannot be sustained, Fernandez v. Garza, 88 Ariz. 214, 354 P.2d 260 (1960).

■ Under A.R.S. § 25–317 subd. B,[1] a divorce cannot be granted on the uncorroborated testimony of a party. Where the divorce is contested, and there is no suspicion of collusion this corroboration may be slight, Hemphill v. Hemphill, 84 Ariz. 95, 324 P.2d 225 (1958); see Lawson v. Lawson, 88 Ariz. 352, 356 P.2d 701 (1961). Where the charge is cruelty, it is not necessary that every instance charged be corroborated, Williams v. Williams, 86 Ariz. 201, 344 P.2d 161 (1959); Hecht v. Hecht, 172 Cal.App.2d 381, 342 P.2d 360 (1959).

■ Corroboration need not be confirmation. It is necessary only that the testimony of the complaining party be supported and strengthened by the coroborating evidence, not that it be confirmed in detail, Martin v. Martin, 166 Va. 109, 184 S.E. 220 (1936). Corroborating testimony is sufficient if it tends to satisfy the impartial and reasonable mind that the plaintiff's material testimony is true, Wilson v. Wilson, 229 Minn. 126, 38 N.W.2d 154 (1949); Anderson v. Anderson, 190 Miss. 508, 200 So. 726 (1941).

1. A.R.S. § 25–317, subd. B: "Either party may be a witness, but no divorce shall be granted upon the testimony or admissions of a party unless they are corroborated by other evidence."

One instance of alleged cruelty on the part of the husband in this case occurred while the parties were engaged in the operation of the machine shop they owned. According to the wife's testimony, one of the shop employees took improper liberties with her person. When she reported this to her husband in the presence of other employees he replied, "Maybe you asked for it." She then asked her husband to fire the offending worker and he answered, "It's your problem, you fire him." She further stated that when she attempted to discharge the employee, the employee said, in the presence of her husband, "You can't fire me." Her husband said nothing but finally ordered the man back to work. The husband's version of this incident indicates that the employee was retained only after he had apologized to Mrs. Kennedy and Mrs. Kennedy had accepted the apology. However, his testimony confirms that the incident occurred and that the offending employee was not discharged, thus sufficiently corroborating the testimony of appellee.

Other acts of cruelty by the husband were alleged to have occurred on the evening the wife left the Kennedy home. She testified that she returned late after a church choir practice, and that in an ensuing argument about where she had been and who she had been with, her husband called her a "whore" and beat her with his fists. Although he denied these specific charges, the husband admitted that this incident occurred, and that during the course of the argument he physically restrained his wife by holding her against her will for "a couple of minutes", so that he could talk to her. This again is sufficient corroboration of his wife's testimony. In view of this testimony the trial court did not err in granting a divorce to the wife.

In challenging the distribution of property made by the trial judge, the appellant contends that the sum of $4,500 brought by the parties from Ohio was his sole and separate property. The trial court found that this sum, which was kept in a joint bank account of the parties in Ohio, was used in the purchase of the real property which comprised part of the parties' community estate. We fail to find in the record evidence sufficient to rebut the presumption that the real property owned by the parties was, in its entirety, community property.

"There is a legal presumption in this jurisdiction that all property acquired by either spouse during coverture takes on a community character. This presumption can be rebutted only by 'strong', 'satisfactory', 'convincing', 'clear and cogent', or 'nearly conclusive evidence'. In this respect it differs from most legal presumptions that are dispelled immediately upon the production of any evidence negating the presumption." Porter v. Porter, 67 Ariz. 273, 279, 195 P.2d 132, 136 (1948).

See also In re Stanger's Estate, 75 Ariz. 399, 257 P.2d 593 (1953); Evans v. Evans, 79 Ariz. 284, 288 P.2d 755 (1955).

The appellant next contends that the division of community property ordered by the court was grossly unfair and constitutes an abuse of judicial discretion. The principal community assets of the parties consisted of certain land in Tempe, a building thereon occupied as a machine shop, the machinery and equipment utilized in this shop, and three other small buildings on this property comprising a dwelling and low-income rental units. The court found the land and buildings to be worth $71,000 and the machinery and equipment to be worth $8,385. The court found Mrs. Kennedy's fair share of these and other minor community assets to be $35,000, and after awarding all of the property to the husband, ordered him to pay this sum to Mrs. Kennedy at the rate of $300 per month. There can be no question that this distribution is fair to the husband if the valuation given these assets by the court can be sustained by the evidence. The appellant contends that it cannot, and we agree.

Differing appraisals of the community property of the parties were given by a receiver appointed in this case and by an expert called by the appellant. The appraisal given by the receiver was in all respects higher than that of appellant's expert. The receiver appraised the property two ways, as a going machine shop, and at its liquidation value. As a going concern the receiver appraised the land and improvements at $71,800, and the machinery, equipment and merchandise on hand on the date of appraisal at $13,000 for a total value of $84,800. However, it was undisputed that the machine shop was no longer a going concern, that is, that it had no business, and the receiver gave as the liquidation value of these same assets $61,800.[2] He gave as the reason for this $23,000 drop in value:

"A  Mr. Divelbiss, there are 83 of these plants in the Valley and practically all of them are shut down now and this tool and die business is the weakest industry in the state at the present time, and that is the reason for it.

"Q  Do I understand then the reduction in value of $23,000 is caused not just by what has happened to the Kennedy place of business but what has happened to that industry in general?

"A  In the general economy, yes, that was my opinion."

2.  According to a supplemental memorandum filed by appellant's attorneys the real property involved in this action has been sold at an execution sale, and struck off to the appellee for her claim of $38,-689.67 (including back alimony) against the appellant.

The value assigned by the trial judge to these assets, based upon an appraisal of the business as a going concern cannot be sustained. The liquidation appraisal value is the highest value supported by the record.

Moreover, it was undisputed that the receiver encumbered the property with a $16,000 mortgage, no part of the principal and interest of which had been paid at the time of trial. The highest net value of the land, buildings and equipment which is sustained by the record, taking into consideration this mortgage, is $45,800. The appraisal figures upon which this value is based included a truck found by the court to be the separate property of the husband, and valued at $300. When this is subtracted a value of $45,500 remains.

It also appears from the record that the receiver, at the time of trial, retained in his hands a sum of cash belonging to the community. The findings of the court do not disclose the amount of this cash, however the appellant contends it was $7,000 and the appellee does not traverse this. The trial court ordered approximately $2,500 of this fund to be paid as fees to the appellee's attorneys and awarded the balance, according to appellant's figures, $4,400, to the appellee.

Adding this $7,000 to the value of community physical assets indicated above, and then deducting the $2,500 paid out of this fund as fees of the wife's attorneys chargeable to the community, we arrive at a net value of the community of approximately $50,000.[3] Of this the wife was awarded $35,000 plus about $4,400 from the receiver's funds or a total of $39,400. The balance remaining to the husband was $10,600.

It is apparent that the trial judge intended to divide the community property of the parties into approximately equal shares. He gave the appellee $39,400 out of an estate he found to be worth approximately $80,000. But because of his error in fixing the value by an appraisal standard that cannot be sustained from the evidence, and further, because he failed to consider the outstanding mortgage on the property, the effect of his order was to give the appellee approximately four-fifths of the community estate.

In order to effect a fair and equitable division of the community property,

3. In summary these figures are:

| | |
|---|---|
| Appraised liquidation value of realty and shop equipment | $61,800 |
| Less mortgage on realty | 16,000 |
| | 45,800 |
| Less value of truck (husband's separate property) | 300 |
| Value of community physical assets | 45,500 |
| Cash held by receiver | 7,000 |
| Total value of community assets | 52,500 |
| Less expenses charged to community (fees of wife's attorneys) | 2,500 |
| Net value of community at time of division | $50,000 |

and to avoid the expense of a retrial of these issues, we order the judgment modified to reduce the award of $35,000 to the appellee by the amount of $10,000 plus whatever sum she received from the hands of the receiver under paragraph 12 of the final order of the trial court.[4] A.R.S. § 12–2103; cf. Roberts v. Malott, 80 Ariz. 66, 292 P.2d 838 (1956); Lawson v. Ridgeway, 72 Ariz. 253, 233 P.2d 459 (1951).

Appellant's next assignment is that the court abused its discretion in awarding fees to the wife's attorneys and to the receiver and his attorney. The court found that the wife's attorneys were entitled to a fee of $7,500 but ordered that only $6,000 of this be charged against the community estate.[5] In addition, the receiver was paid $2,100 and his attorney $3,500.

The wife's attorneys worked 75 hours on the case and in addition spent 19 attorney-days in court at the trial or in connection with orders to show cause. The court found that without the efforts of the receiver and his attorney the assets of the estate would have been dissipated and hidden by the appellant. The receiver recovered over $25,000 from a corporation organized by the appellant to insulate his business from the claims of his wife.

A trial judge has broad discretion to award attorneys' fees in connection with a divorce action, Dyer v. Dyer, 92 Ariz. 49, 373 P.2d 360 (1962). In view of the complexity of this case, the time spent by the attorneys and the receiver, and the services performed, we think the awards were not an abuse of that discretion.

The appellant next contends that the court erred in awarding the wife alimony of $300 a month for the years 1959, 1960 and 1961 and $400 a month for 1962 and subsequent years, for the reason that this award is not sustained by the evidence. Here again the trial court has broad discretion to determine what is a reasonable award of alimony. The factors to be considered include the needs of the wife and her ability to support herself, Franklin v. Franklin, 75 Ariz. 151, 253 P.2d 337 (1953), the ability of the husband to pay, Tennery v. Tennery, 35 Ariz. 69, 274 P. 638 (1929); and the other circumstances of the parties including their standard of living.

In this case the only testimony as to the needs of the wife was that her expenses had averaged $515 per month during the nine month period between the time of separation and the trial. The evidence as to the ability of the husband to pay showed

---

4. We have referred to this amount as $4,400, but this figure appears only in appellant's brief, not in the record. We therefore leave the exact amount to the determination of the trial court.

5. $3,500 of this $6,000 was paid out of community funds prior to trial and an additional $2,500 was ordered paid out of the receiver's funds in the trial court's final order. This is the $2,500 which entered into our figures above.

259

that in the four years prior to 1956 the highest annual income of the parties had been approximately $4,400. In the ten-month period immediately prior to their separation the parties enjoyed a period of meteoric financial success, during which time they earned over $100,000. At the time of the trial the appellant's income was an allowance of $100 per week out of the funds held by the receiver. The trial court found as a fact:

"The defendant has always worked hard and has made a moderate income. The plaintiff and the defendant both worked hard in the building of the Arizona business. The defendant became totally engrossed in the work and in the phenominal financial return, a return not theretofore experienced nor likely again to be experienced."

Appellant's income at the time of trial does not reflect any earning power which he may have had, but was an allowance out of funds earned by the parties before their separation. The appellee was given these funds in their entirety by the trial court's final order. There is no evidence in the record to show that appellant had any prospects of income following the final order. As far as the record shows, the appellant has no special abilities other than as a machinist. It is undisputed that at the time of trial the tool and die industry, in which appellant had previously earned his

living, was in a very depressed economic condition.

The trial judge's award appears to be based upon the belief that the appellant could begin operation of his shop again and thereby earn some moderate income. However, at the end of the proceedings below, appellant's business was saddled with a $16,000 mortgage and was without liquid capital. The trial court deferred the date at which the wife's lien to secure payment of her portion of the community estate attached to the property, in order to enable appellant to obtain the financing he said he needed for a new business operation. Nevertheless, in view of the unpaid mortgage already on the property, and the depressed condition of the industry, we think it unreasonable to base the alimony award upon any expectation that the appellant would again be able to operate his machine shop. Furthermore, it was speculation under these circumstances to order additional alimony for 1962 and the years thereafter, as there was nothing upon which could be predicated a greater ability on the part of the appellant or a greater need on the part of the appellee in these years.

The trial court is directed to modify the division of community property as herein indicated. The court should also reconsider appellant's alimony obligation upon the basis of his earning power at the time of trial, and make such further adjustments of the alimony obligations as will be just and

equitable in light of the appellant's present earning power and the appellee's present needs.

The judgment is reversed in part and remanded with directions.

STRUCKMEYER and JENNINGS, JJ., concur.