No. 81-156

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

IN RE THE MARRIAGE OF

PEGGY ANN PIERCE,

       Petitioner and Respondent,

   -vs-

JAMES RAY PIERCE,

       Respondent and Appellant.

Appeal from:  District Court of the First Judicial District,
In and for the County of Lewis & Clark, The
Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

    For Appellant:

        Gregory A. Jackson, Helena, Montana

    For Respondent:

        Leo J. Gallagher, Helena, Montana
        Joan Uda, Helena, Montana

Submitted on Briefs:  October 30, 1981

Decided:  May 20, 1982

Filed:  **MAY 20 1982**

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

James Ray Pierce appeals the judgment entered in the District Court of the First Judicial District, County of Lewis and Clark, State of Montana, dissolving the marriage of the appellant, establishing child custody and child support and awarding maintenance for two children.

This Court on December 8, 1981, after examining the record on appeal, noted that the appeal was premature under Rule 54(b), M.R.Civ.P., and returned the case to the District Court pending final judgment. Pursuant to our order, the District Court made a Rule 54(b) certification on December 23, 1981, and returned the case to this Court for final determination on appeal.

The appellant sets forth in his brief two issues for consideration by this Court. We feel the proper issue is a combination of those posed by appellant and can be summarized as whether a stepfather or former stepfather, who has no biological relationship to a minor child and who has not legally adopted the child under the proceedings established in Montana's Uniform Adoption Act or any comparable procedures, has any standing to contest the custody of a child in dispute with the child's biological mother.

Respondent, the mother, gave birth to a child, Christopher Wade Tichnor, on June 26, 1977. At the time of Christopher's birth, the respondent was unmarried. She testified that she knew the name of the natural father, but that it was not put on the birth certificate, which was left blank. She testified further that she told the doctor to leave the bottom of the birth certificate blank so that, "when I want Christopher to be adopted, then instead of

-2-

going through any ____ ____, that we just get this paper and have it signed and notarized."

Between four and six months after Christopher was born, the respondent and the appellant, who had been acquainted for some time, began dating and soon contemplated marrying. They were married on February 20, 1978, at which time Christopher was about eight months old. Both parties testified that before their marriage they discussed what relationship the child would have to the appellant, James Ray Pierce. They both testified that they agreed and intended at that time that the relationship of parent and child would be established between appellant and the child, ultimately through adoption, that the child would bear the Pierce name from and after the time of the marriage of the parties, and that, in turn, the appellant would assume the responsibility of a father of the child.

Following the marriage of the parties, the child lived with and was supported by both parties. Appellant assumed the role of a father during that period of time. During the marriage the parties also discussed consummating a formal adoption of the child by the appellant. They testified that because of their limited financial resources they sought to accomplish the adoption by the most expeditious, inexpensive means. Appellant testified that he contacted an attorney at the Montana State Highway Department, where he worked. Appellant told the attorney that he was the natural father of the child and asked how he could get his name placed on the birth certificate as the father. As a result of advice given appellant by this attorney, both parties executed an affidavit stating that the appellant was

the natural father of the child. This affidavit was notarized and executed by both parties with the specific intention that it was accomplishing an "economic adoption." For unknown reasons, the affidavit was never filed with the Bureau of Vital Statistics.

The parties never began a formal adoption under the procedure set forth in Montana's Uniform Adoption Act, and on January 21, 1981, the marriage of the parties was dissolved. Thus, at that time, not even the relationship of a stepparent-stepchild existed between the appellant and Christopher Wade.

Appellant argues there was sufficient unimpeached testimony introduced at the trial that an oral valid contract to adopt existed which was enforced and fully executed by both parties thereby creating the relationship of child and parent between appellant and Christopher Wade Pierce. Appellant contends that such contract should be enforced by the court, or, in the alternative, that the court should find that an equitable adoption existed.

Appellant cites and relies on as authority a Montana case, In Re Clark's Estate (1937), 105 Mont. 401, 74 P.2d 401, for the proposition that there can be a valid equitable adoption or enforcement of a contract to adopt in the State of Montana. He bases his entire case on the "contract to adopt" as a type of equitable adoption, or an adoption by estoppel. As will be noted further, however, the law of Montana and other jurisdictions is clear that such theories have no application to a proceeding, such as this, where a stepfather is seeking to establish custodial rights in his former stepchild against the wishes of the child's mother.

-4-

In Re Clark's Estate, supra, clearly does not support appellant's case. There, the "child" in question claimed an adoption in an effort to cut down the inheritance tax by the State of Montana. The stepchild argued that since an "equitable adoption" had taken place, he should be treated as a child of the decedent for estate tax purposes, thereby reducing the estate tax liability. This Court, in disposing of that argument, held that although Montana does recognize the doctrine of equitable adoption in estate cases, the grant of relief in equity does not undertake to change the legal status of the stepchild from a contract claimant to an "heir" of the decedent. Therefore, since the child had not legally been adopted, he was not entitled to the state inheritance tax exemption afforded the child of the deceased.

The appellant also cites and relies on a number of other cases outside this jurisdiction. Young v. Young (Tex. 1976), 545 S.W.2d 551; Sargeant v. Sargeant (1972), 88 Nev. 223, 495 P.2d 618; In the Matter of the Estate of Lamfrom (1962), 90 Ariz. 363, 368 P.2d 318; In Re Grace's Estate (1949), 88. Cal.App.2d 956, 200 P.2d 189; Chavez v. Shea (1974), 185 Colo. 400, 525 P.2d 1148; Bower v. Landa (1962), 78 Nev. 246, 371 P.2d 657; Jones v. Loving (Okla. 1961), 363 P.2d 512; In the Matter of the Estates of Williams (1960), 10 Utah2d 83, 348 P.2d 683. All of these cases talk about equitable adoption for intestacy purposes only and do not involve true custody cases.

Appellant asserts that in recent years courts have recognized equitable adoption outside of intestacy or other death-related situations and cites Sargeant v. Sargeant, supra, as authoritative. In examining the Sargeant case, we

-5-

note that factually it has no application here. There, the child involved was not the biological or natural child of either of the parties. The child came into their care when he was four, and the marriage was dissolved when the child was fifteen. We note that both in Sargeant and in Young v. Young, supra, divorcing women were seeking child support from husbands who were not the biological fathers of the children for whom support was sought. In both cases, the court denied support. No cases have been found, nor were any cited, which awarded support under those circumstances.

In Montana the law is clear that for an adoption to occur, the adoptive parent or parents must follow the required procedures provided in Montana's Uniform Adoption Act, Title 40, Chapter 8, Montana Code Annotated. This was set clear by a recent opinion of this Court, Matter of Guardianship of Aschenbrenner (1979), ___ Mont. ___, 597 P.2d 1156, 36 St.Rep. 1282, wherein this Court, in dealing with the termination of parental rights or custodial rights of the parents, set forth the correct procedure to be followed.

Aschenbrenner involved a petition for guardianship filed by grandparents, in the contest of which the District Court terminated a mother's parental rights by finding her unfit and the children dependent and neglected. This Court held:

> "The confusion in the District Court is understandable. We are able to identify at least five distinct statutory schemes governing the termination of parental rights or the custody of children or both . . . Title 41, Chapter 3, MCA (abused, neglected and dependent youth); . . . Title 40, Chapter 4, MCA (Uniform Marriage and Divorce Act); . . . sections 40-6-233, and -234, MCA (remedy for parental abuse); . . . Title 40, Chapter 8,

MCA [adoption statutes]; . . . Title 72, Chapter 5, Part 2 (Guardianship of Minors)." 597 P.2d at 1164.

In that opinion, we pointed out that although the subject matter of these five distinct procedures overlapped to some extent, each must be used for the purpose intended and the correct and specific procedure must be "rigorously followed" in order for a valid judgment or order to issue. Otherwise, the court lacks jurisdiction, and the judgment or order is invalid. Henderson v. Henderson (1977), 174 Mont. 1, 9, 568 P.2d 177, 181; Matter of the Guardianship of Doney (1977), 174 Mont. 282, 287, 570 P.2d 575, 578.

This line of cases makes it very clear that the correct procedures must be followed and followed rigorously. There is good cause for those procedures. It is well settled in the law throughout this country, including Montana, that the right of a parent to custody of his child is a fundamental constitutional right. Aschenbrenner, supra. Therefore, the court must scrutinize very closely any state action that interferes with that right. This Court made clear that another purpose for requiring the correct procedures to be rigorously followed is to insure that the children involved receive the full protection of the laws designed to protect them. See, In Re the Guardianship of Evans (1978), 179 Mont. 438, 587 P.2d 372.

In this case we are asked to permit a former stepfather to gain custody rights regarding his former stepson. No adoption occurred under Montana's Uniform Adoption Act. No petition for adoption was ever filed. In fact, no formal steps whatsoever were taken to effectuate an adoption under our Act. Thus, the only way appellant could obtain standing

to request custody of this minor child is if the parental rights of the mother respondent were terminated.

Under Montana law it is clear that the only way parental rights can be terminated judicially, absent consent of the biological parents, is under Montana's statutes governing child abuse, neglect or dependency, under section 41-3-401 et seq., MCA. Henderson v. Henderson, supra; Guardianship of Doney, supra. Our statutes make it very clear that the county attorney is the person who must file petitions alleging abuse, neglect or dependency. See, section 41-3-401(1), MCA. Under the Henderson, Doney and Aschenbrenner trilogy, that is the only way a nonparent can seek custody of someone else's child.

The attempted shortcutting of all Montana statutory and case law governing the legal relationships of parents and children to each other, by using an "executory contract adoption" theory, cannot be approved in custody cases.

One problem arises as a result of our holding which was not raised as an issue on appeal. The parties agreed in April 1981, in a stipulation for interim custody and property determination, that the appellant would have certain visitation privileges for both children. In addition, appellant agreed to pay $75 a month in support money for each child from April 1981 until the matter was settled fully and finally by this Court. The result of the judgment of the District Court and our affirmance of the same is the holding that appellant, from the day of divorce, has no standing whatsoever to contest the custody of Christopher, nor has he any obligations to that child.

Therefore, the judgment of the District Court is

affirmed except for support money for Christopher. These issues are remanded to the District Court for determination.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices