800 P.2d 1018

Terry E. **GORDON, Plaintiff–Appellant,**

v.

**Leroy E. GORDON,**
**Defendant–Respondent.**

No. 18207.

Supreme Court of Idaho.

Aug. 23, 1990.

Dissent on Denial of Rehearing
Nov. 28, 1990.

Paul C. Keeton, argued, Keeton & Tait, Lewiston, for plaintiff-appellant.

Jay P. Gaskill, argued, Randall, Blake, Cox, Risley & Trout, Lewiston, for defendant-respondent.

BOYLE, Justice.

In this child support case we are called upon to determine whether a non-parent is required to pay child support pursuant to a decree of divorce and whether the motion to amend the decree complied with the time requirements of I.R.C.P. 60(b).

## Facts

Terry E. Gordon and Leroy E. Gordon were married in March of 1974. At the time of the marriage, Leroy Gordon had three children from a prior marriage which were subsequently adopted by Terry Gordon. Terry Gordon had one child from her prior marriage who was subsequently adopted by Leroy Gordon. One child, Travis Gordon, was born to the parties and is the only natural child of their marriage. None of these five children are involved in this appeal.

The instant appeal centers around Ginger Gordon who was born in 1976 to Brenda Titus who left her with Terry and Leroy Gordon in September, 1978 because she was unable to take care of her. In January of 1979 the Gordons unsuccessfully attempted to adopt Ginger. The Gordons thereafter attempted to become Ginger's legal guardians but the guardianship was never completed and Ginger continued to live with the Gordons under a power of attorney. Ginger lived with the Gordons from 1978 through 1987, was known by the family name, and the Gordons treated her as though she were a member of the family.

In 1987, Terry Gordon filed a divorce action against Leroy Gordon and a divorce decree was entered December 17, 1987. In an affidavit filed during the divorce proceedings Terry Gordon indicates that Ginger Gordon was staying with the family pursuant to a court ordered guardianship. However, the record indicates that the guardianship was only temporary and had expired by the time the divorce action was filed. The decree of divorce ultimately entered ordered Leroy Gordon to pay the sum of $100 per month per child for three minor children; namely, Mickey Gordon, Travis Gordon and Ginger Gordon.[1] On January 10, 1989, Leroy Gordon filed a motion to modify the decree claiming that at the time of the divorce he mistakenly believed that he had a legal duty to support Ginger. The magistrate denied the motion on the

ground that the motion should have been made within six months of the date of entry of the decree pursuant to I.R.C.P. 60(b) and was not timely. The magistrate further found that since there was no substantial change in the circumstances of the parties that the motion for modification should be denied.

The district court reversed the magistrate and ruled that Leroy Gordon had no obligation to pay support for Ginger pursuant to I.C. § 32–706 which requires child support to be paid when the parent owes a duty to support the child. The district court stated "because the child is not the natural child, nor has the child been adopted by Defendant, Defendant has no legal obligation of support."

## I.

### Modification of Decree

In order to modify a child support order the moving party must comply with the provisions of I.C. § 32–709 or I.R.C.P. 60(b). Idaho Code § 32–709 allows the modification of a child support order only "upon a showing of a substantial and material change of circumstances." In *Embree v. Embree*, 85 Idaho 443, 380 P.2d 216 (1963), the Court stated:

> An application for modification of a decree awarding child support, upon the ground of a material permanent change in the circumstances of the parties since the entry of the decree, is addressed to the sound judicial discretion of the trial court. (Citations omitted) .... [O]nly when there is a manifest abuse of discretion will the determination of the trial court be interfered with on appeal.

85 Idaho at 450–51, 380 P.2d at 221.

In the present case Leroy Gordon claims that his discovery of a mutual mistake of fact as to the legal status of Ginger and his mistaken belief that he had a duty to pay support is a substantial and material change of circumstances. However, both the magistrate court and district court

---

1. There were, in fact, four minor children at the time of the divorce. Leroy Gordon II was receiving payments pursuant to social security survivorship benefits, and therefore, was not included in the child support order.

found that there was no material change of circumstances and no authority has been cited to this Court that a mutual mistake of fact in and of itself constitutes a substantial change of circumstances. Furthermore, the record does not reveal any evidence of a substantial and material change in circumstances sufficient to warrant modification of the decree. Therefore, the finding of the magistrate that there is no change of circumstances warranting a modification of the order is supported by the record and is affirmed.

## II.

### Motion Must Be Made Within Six Months

A party seeking relief from a final judgment under the provisions of I.R.C.P. 60(b) must file a motion within six months after entry of the judgment and assert facts which bring the case within the purview of the rule. *Catledge v. Transport Tire Co.*, 107 Idaho 602, 691 P.2d 1217 (1984). Idaho Rule of Civil Procedure 60(b) is mandatory and states in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ... (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. *The motion shall be made within a reasonable time, and for reasons (1), (2), (3) and (6) no more than six (6) months after the judgment, order, or proceeding was entered or taken.*

(Emphasis added.)

 Leroy Gordon filed his motion for modification substantially more than six

months after the divorce decree and order for support was entered. Consequently, any attempt to modify or set aside the judgment and order pursuant to subsection (1), (2), (3) or (6) will not be allowed because the applicable time limit under I.R.C.P. 60(b) had clearly expired. *Catledge v. Transport Tire Co.*, 107 Idaho 602, 691 P.2d 1217 (1984). Furthermore, a Rule 60 motion is directed to the sound discretion of the district court and it is well established that

[M]otions under Rule 60(b) involve a nice balance between the interest in finality and the desire to achieve justice, and that the district courts, therefore, are given a very large measure of discretion in passing on those motions. The appellate courts pay considerable deference to that discretion in the district court.

The appellate court readily can reverse if the district court has not exercised discretion, as when it mistakenly thinks it lacks power to act. It can readily reverse also if the district court has granted a motion when it was powerless to do so, or if otherwise it has erred as a matter of law. But it will not set aside the district court's exercise of discretion unless it is persuaded that under the circumstances of the particular case the action of the district court is an abuse of discretion.

11 Wright and Miller, *Federal Practice and Procedure: Civil* § 2872, p. 261 (1973); *see also* § 2857; *Sherwood & Roberts, Inc. v. Riplinger*, 103 Idaho 535, 650 P.2d 677 (1982); *Schraufnagel v. Quinowski*, 113 Idaho 753, 747 P.2d 775 (Ct.App. 1987).

 Leroy Gordon argues that the relief contemplated in I.R.C.P. 60(b)(5) should apply in that it is no longer equitable that the judgment should have prospective application because he has discovered that he had no legal duty, *i.e.*, guardianship, to pay support for Ginger. We disagree. A motion pursuant to the "no longer equitable" language of Rule 60(b)(5) however, implies some change in circumstances.

The rule allows relief if it is "no longer equitable" for the judgment to have pro-

spective application. This provision is not a substitute for an appeal. It does not allow relitigation of issues that have been resolved by the judgment. Instead it refers to some change in conditions that makes continued enforcement inequitable.

11 Wright and Miller, *Federal Practice and Procedure: Civil* § 2863, pp. 206–07 (1973).

Therefore, we are of the opinion and hold that the condition for relief pursuant to Rule 60(b)(5) is similar to the requirements of I.C. § 32–709, *i.e.*, some change in the circumstances of the parties is necessary to make the prospective application of the judgment inequitable. In this instant case both the magistrate and district courts determined that there was no change in circumstances. A review of the record supports those findings and the relief requested pursuant to Rule 60(b)(5) is not warranted.

■ Leroy Gordon also claims that the original decree is void and relief should be granted pursuant to Rule 60(b)(4). Leroy claims that because he is not the natural nor adoptive father of Ginger he owes no duty to Ginger, and therefore, the trial court did not have jurisdiction to order child support for Ginger.

In *Puphal v. Puphal,* 105 Idaho 302, 669 P.2d 191 (1983), this Court stated:

A void judgment is a ground for relief under I.R.C.P. 60(b)(4). However, "in order for a judgment to be void, there generally must be some jurisdictional defect in the court's authority to enter the judgment, either because the court lacks personal jurisdiction or because it lacks jurisdiction over the subject matter of the suit. (Citation omitted.)"

105 Idaho at 306, 669 P.2d at 195.

*Moore's Federal Practice and Procedure* comments on judgments void because of lack of subject matter jurisdiction as follows:

In the sound interest of finality, the concept of void judgment must be narrowly restricted. And it is.

By jurisdiction over the subject matter the cases mean that the court must have jurisdiction or power to deal with the class of cases in which it renders judgment..... In brief, then, except for the rare case where power is plainly usurped, if a court has the general power to adjudicate the issues in the class of suits to which the case belongs then its interim orders and final judgments, *whether right or wrong,* are not subject to collateral attack, so far as jurisdiction over the subject matter is concerned.

7 *Moore's Federal Practice and Procedure,* ¶ 60.25[2], p. 60–225–230 (1990) (emphasis added.)

■ A judgment that incorrectly interprets a rule of law does not divest the court of jurisdiction over the subject matter or over the parties. *Brown's Tie & Lumber Co. v. Kirk,* 109 Idaho 589, 710 P.2d 18 (Ct.App.1985). In the present action, however, it is clear that the magistrate court had personal jurisdiction over Terry and Leroy Gordon, the parties to the divorce action. Furthermore, the magistrate court had subject matter jurisdiction over child support issues arising from the divorce. The magistrate had subject matter jurisdiction to determine the legal status of Ginger and to determine whether a duty existed for Leroy to pay child support for the children. We therefore hold that the magistrate court had subject matter jurisdiction over the case, and the decision, judgment and decree of the magistrate is valid.

Idaho Rule of Civil Procedure 60(b) allows a party to seek relief from a decision based upon a mistake. Such is the case in the instant action. The rule balances the interest in finality with the interests of justice and requires a motion for relief based upon mistake to be filed within six months. In this case Leroy Gordon failed to comply with that provision, and absent a real and substantial change in circumstances the magistrate is without power to grant relief. Because we have resolved this appeal on a procedural basis it is not necessary that we address or resolve the issue of whether a non-parent can be required to pay child support or whether the

theory of equitable adoption is recognized in Idaho.

There have been no substantial changes warranting a modification of the decree pursuant to I.C. § 32–709 and because the motion to modify was filed more than a year after the entry of the order, the decision of the district court is vacated and the original decree and order of the magistrate court ordering child support is affirmed.

Costs to appellant; no fees on appeal.

BAKES, C.J., and BISTLINE, JOHNSON and McDEVITT, JJ., concur.

## OPINION ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice, dissenting on denial of petition for rehearing.

On receipt of Mr. Gordon's petition for a rehearing, mine was the only vote that we reconsider before letting our opinion stand. On considering the supporting brief and on further reflection of the unusual circumstances, there is reason to believe that our decision probably is erroneous as a matter of law, and the district court was eminently correct in accepting the legislature's statutory law in preference to indulging in the doing of equity.

A unanimous decision of the Washington Supreme Court comes close to the circumstances of this case. In that case, as in this, the marriage was dissolved. By agreement of the parents, the four minor children were placed under joint custody of both, but with the not unusual provision that the plaintiff-father would have the children live with him, except during stated vacation periods when they would be with the defendant-mother. Thereafter both parties petitioned for modification of that custody arrangement. The superior court for King County, Judge Findley, gave sole custody of all four minors to the plaintiff, and placed restrictions on the mother's visitation. But, lo! Although the defendant was mother of all four children, the plaintiff was only the father of three. A boy about three years of age had been born during the marriage, but, as the decision states: "There is no dispute between the

parties that he was born while the parties were husband and wife, and they agree that he was conceived while the parties were separated and that his father is the present husband of defendant." *Palmer v. Palmer*, 42 Wash.2d 715, 258 P.2d 475, 476 (1953).

Other excerpts from the *Palmer* opinion serve to display the resolution reached:

The presumption that a child born during wedlock is legitimate is strong, but it is rebuttable. *Carfa v. Albright*, 1951, 39 Wash.2d 697, 700, 237 P.2d 795, and cases cited. It is rebutted conclusively in this case, and the trial court found that defendant's present husband is the putative father, meaning 'reputed father,' 3 Bouvier Law Dictionary, Rawle's 3d Rev., 2774, of this child.

. . . .

A divorce action is a statutory proceeding, and the court has no jurisdiction that cannot be inferred from a broad interpretation of the statutes. *Arneson v. Arneson*, 1951, 38 Wash.2d 99, 100, 227 P.2d 1016. These are contained in the divorce act of 1949. RCW, chapter 26.08, cf. Laws of 1949, chapter 215, p. 698, Rem. Supp. 1949, § 997–2 *et seq*. The act contains no provision authorizing an adjudication other than of 'the custody, support and education of the minor children of such marriage.' RCW 26.08.110, cf. Rem.Supp.1949, § 997–11. The section regarding modification of divorce decrees refers to the minor children of the marriage. RCW 26.08.160, cf. Rem.Supp. 1949, § 997–16.

. . . .

He [the third child] is not a child of the marriage of the parties to this divorce action. The issue of his custody is beyond the scope of the divorce act and, consequently, beyond the jurisdiction of the court in this cause.

The true paternity of this child was known to both parties before the divorce decree was entered, but neither of them disclosed it to the court at that time. . . . Because they concealed that fact, the court erroneously determined that the

custody of this child was within the subject matter of the action then before it, and entered a decree regarding it. This present proceeding is brought in that action, by and between both parties to it. It has resulted in the proof, without objection, of an error and its source. The error pertains to the jurisdiction of the court upon a matter placed in issue by the parties.

We need not decide whether or not any procedural objection ever can be urged successfully against the correction of such an error by this kind of proceeding. None is before us. In this case, the error cannot be permitted to persist.

The unavoidable result of our conclusions is that, between the parties to this action, the mother of this child will have his custody.

*Palmer*, 258 P.2d at 476–77. The court's unanimous conclusion was:

In this case, because of the nature of the facts involved, we direct the trial court to correct its findings of fact and conclusions of law and to modify the judgment appealed from, to show that plaintiff is not the father of the third child, and that the custody of that child is not before the court in this proceeding.

*Palmer*, 258 P.2d at 477. The Washington court was properly concerned that the superior court had acted in excess of its jurisdiction, albeit by reason of the inadvertently delayed non-disclosure of the parties. On discovering the true circumstances the higher court readily ruled that a custody award of a child who was not a child of the marriage could not be allowed to stand.

It should be observed that Idaho statutory law has been, and is, much like that of Washington. *See* I.C. § 32–1103: "**Jurisdiction.**—A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if: ...." *See also* I.C. § 32–1005 (court may inquire into the custody of any unmarried *child of the marriage*, and may award the custody of such child to either, ....); and *Smiley v. Smiley*, 46 Idaho 588, 269 P. 589 (1928), C.S. § 4644 makes

no provision compelling the husband to support the wife's children by a former marriage.

Mr. and Mrs. Gordon, like the Palmers, allowed the entry of a custody decree without the divorce court being fully advised. Later Mr. Gordon learned of his mistake in thinking that he had no choice but to pay child support for a child not biologically his. He also learned that he had no right to custody of that child. Properly advised as to the law, he sought relief from the order which directed him to pay child support. Judge Ponack, by virtue of an experience in law which goes back a far piece, and an unexceeded grasp of the law, ruled in accordance with his perception of the law. But, was he in error? No, not according to the Washington Supreme Court. Yes, says this Court, without realizing that jurisdiction is the issue. Not necessarily jurisdiction over the parties, they are in court, but over Mr. Gordon in the power sense of jurisdiction, *i.e.*, the power to order Mr. Gordon to support a child who is *not* a child of the marriage.

The Court, so it seems on a more matured reflection, has allowed itself to become so over-concerned with the technicalities of its self-promulgated rules that it is becoming oblivious to the basic function for which it was constitutionally created, for the administration of just settlement of controversies with adherence to well-settled statutory law. What it has done here is the opposite of the action taken by the Washington court. An important issue has been decided by what in criminal law is called a procedural default. Moreover, there is no procedural obstacle here, none whatever, and this is of as much concern as is fastening on Mr. Gordon an obligation to pay support. Rule of Civil Procedure 60(b)(4), if correctly read, is not subject to a six month time limitation, nor to any time limitation whatever. Nor should it be. A void judgment is just what the adjective means—void. That which is void is "[n]ull; ineffectual; nugatory; having no legal force or binding effect...." *Black's Law Dictionary* 1573 (6th ed. 1990). As such, it is susceptible to being stricken at any time. Only mischief can result from what pres-

ently appears to me to be a misapplication of Rule 60(b)(4).

In addition to the *Palmer* case, another pertinent authority which should be given consideration before this Court slams the door on *Gordon v. Gordon* is briefly synopsized, as well as another Washington opinion which is set out in full, having largely to do with the validity of declaring an equitable adoption. The synopsis by West Publishing Company of *Pierce v. Pierce*, 198 Mont. 255, 645 P.2d 1353 (1982), fairly well presents the holding:

> Appeal was taken by stepfather from a judgment of the District Court, First Judicial District, County of Lewis & Clark, Peter G. Meloy, J., dissolving his marriage to child's biological mother, establishing child custody and child support, and awarding maintenance for two children. The Supreme Court, Harrison, J., held that the stepfather, who had no biological relationship to the minor child and who had not legally adopted the child under the proceedings established in the Uniform Adoption Act or any comparable procedure, had no standing in dissolution proceeding to contest the custody of the child in a dispute with the child's biological mother.

There is also a wealth of instructive information found in the text of the opinion, which relieved Mr. Pierce of any further obligation to support Christopher, who was not a child of the marriage, and also informed Mr. Pierce that he had no standing where Christopher's custody was concerned:

> The appellant [James Ray Pierce] sets forth in his brief two issues for consideration by this Court. We feel the proper issue is a combination of those posed by appellant and can be summarized as whether a stepfather or former stepfather, who has no biological relationship to a minor child and who has not legally adopted the child under the proceedings established in Montana's Uniform Adoption Act or any comparable procedures, has any standing to contest the custody of a child in dispute with the child's biological mother.

. . . .

Appellant asserts that in recent years courts have recognized equitable adoption outside of intestacy or other death-related situations and cites *Sargeant v. Sargeant*, [88 Nev. 223, 495 P.2d 618 (1972)], as authoritative. In examining the *Sargeant* case, we note that factually it has no application here. There, the child involved was not the biological or natural child of either of the parties. The child came into their care when he was four, and the marriage was dissolved when the child was fifteen. We note that both in *Sargeant* and in *Young v. Young*, [545 S.W.2d 551 (Tex.Civ.App. 1 Dist.)], divorcing women were seeking child support from husbands who were not the biological fathers of the children for whom support was sought. In both cases, the court denied support. No cases have been found, nor were any cited, which awarded support under those circumstances.

*Pierce*, 645 P.2d at 1354, 1356. *Sargeant v. Sargeant*, 88 Nev. 223, 495 P.2d 618 (1972), provided the following:

> 3. There were no children born of the marriage but the Sargeants in 1958 assumed responsibility for the care, control and custody of Clarence Michael Estes, now also known as Michael C. Sargeant, who was then four years of age, and 15 years of age at the time of trial.
>
> Michael was the son of Matilda Sargeant's niece. The child was abandoned by his natural parents who are still alive, but there whereabouts are in doubt. With the parents' consent Michael had lived with his grandmother, Matilda's sister, until he came to live with these parties.
>
> While the evidence of their intention to adopt him is inconclusive he was treated as their natural born son in all respects. Harry Sargeant provided full support, maintenance and education for the child. Neither the grandparents nor the natural parents ever requested his return. He was given their name and Harry Sargeant had established trust funds for the child's education and had made provision for him in his will. When these proceed-

ings were instituted Harry promised to buy Michael a home and an automobile but he also threatened to cancel those promises and to cease future support and all other benefits being provided if Matilda defended against his divorce action.

The question now is whether the trial court's order compelling the husband to establish a $50,000 trust fund for the boy is valid. We must hold that it is not.

Evidence of the husband's affection for the child is manifold, but in the absence of even an unfulfilled promise to adopt, the doctrine of equitable adoption cannot apply. *Bower v. Landa,* 78 Nev. 246, 371 P.2d 657 (1962); *Fuller v. Fuller,* 247 A.2d 767 (D.C.Ct.App.1968). The trial court instead sought to support the $50,000 trust fund on the oral agreement to support the boy. This, of course, establishes their standing in the place of a parent (*loco parentis*) but one may abandon the burdens attendant upon such status at any time. *Farris v. Farris,* 58 Wash.2d 837, 365 P.2d 14 (1961); *Franklin v. Franklin,* 75 Ariz. 151, 253 P.2d 337 (1953); *Chestnut v. Chestnut,* 247 S.C. 332, 147 S.E.2d 269 (1966); *see also* 18 S.C.L.Rev. 541 (1966). Nor will bare promises of future support convert this status to a degree of permanence on the theory that the husband is estopped from withdrawing from those promises. *Fuller v. Fuller, supra; c.f. Clevenger v. Clevenger,* 189 Cal.App.2d 658, 11 Cal. Rptr. 707, 90 A.L.R.2d 569 (1961); *also People v. Sorensen,* 68 Cal.2d 280, 66 Cal.Rptr. 7, 437 P.2d 495 (1968); *Niesen v. Niesen,* 38 Wis.2d 599, 157 N.W.2d 660 (1968); *Wilson v. Wilson,* 14 Ohio App.2d 148, 237 N.E.2d 421, 426 (1968).

*Sargeant,* 495 P.2d at 622–23.

The opinion in *Young v. Young,* 545 S.W.2d 551 (Tex.Civ.App.1976), is sufficiently succinct to bear repeating:

This is an appeal from that portion of a divorce decree requiring appellee to pay child support for only one of the three children born to his wife during the term of their marriage. The evidence established that appellee was the father of only one of the three children. The trial court concluded that appellee had no duty of support for the other two children. The appellant contends that appellee is the father of all three children by virtue of Article 12.02, Texas Family Code, and therefore has a duty to support all three of the children.

Three children were born during the marriage of Julia Young and Lee Young. Two of them were born while Lee Young was in prison. The evidence establishes, and the trial court found, that Lee Young was not the biological father of the two younger children.

Texas Family Code, Section 12.02 (1973) provides:

'(a) a child is the legitimate child of a man if the child is born or conceived before or during the marriage of his mother and the man.'

If this provision of the Family Code is applied literally a stepfather would in every case become the legal father of his stepchildren. The 'man' would become the 'parent' for the purposes of the Family Code of a child even though he wasn't the biological father, if the child was born or conceived before or during the marriage of his mother and the man. See History of the Family Code, 5 Tex. Tech.Law Review 267, 415.

. . . .

At common law a child born during a valid marriage is presumed to be the legitimate child of the parties to that marriage. *Burtis v. Weiser,* 195 S.W.2d 841 (Tex.Civ.App.—Beaumont 1946, writ ref.). This presumption can be overcome by proof of non-access. *Zimmerman v. Zimmerman,* 488 S.W.2d 184 (Tex.Civ. App.—Houston [14th] 1972, no writ). The trial court did not err in finding that the two children were not legitimate children of the marriage of Julia Young and Lee Young.

There is evidence that Lee Young requested Julia Young to place his name on the birth certificate of the second child as father. This was done. Thereafter Lee Young was released from prison on parole and lived with Julia Young, Jacqueline Young, his daughter, and Felishia Young. During the approximate one

year period that he lived with them he treated Felishia no different than he did Jacqueline. Based on these facts Julia Young contends that Lee Young would be legally liable to support Felishia under the doctrine of adoption by estoppel.

An agreement to adopt is a necessary element of adoption by estoppel. *Cavanaugh v. Davis*, 149 Tex. 573, 235 S.W.2d 972 (1951). The existence of such a contract may be proved by the acts, conduct and admissions of the parties and other relevant facts and circumstances. *Cavanaugh v. Davis*, supra. The facts recited above do not furnish a sufficient basis in evidence to require an inference that Julia Young and Lee Young had agreed that Lee Young should adopt Felishia as his child. Neither party was asked whether or not there was an agreement to adopt. Both were competent to testify at trial. Under such circumstances the evidence would need to be strong indeed to support an inference of an agreement to adopt.

The trial court did not err in ordering child support for only the child of which Lee Young was the biological father.

*Young*, 545 S.W.2d at 552–54.

*Farris v. Farris*, 58 Wash.2d 837, 365 P.2d 14 (1961), is even more succinct:

The appellant husband, plaintiff in the superior court, appeals from that portion of a divorce decree requiring him to support his wife's child, notwithstanding a specific finding that he is not the father.

In a divorce action, under RCW 26.08.-110, which authorizes the court to provide for the support of the minor child of such marriage, the husband cannot be ordered to support the wife's children unless he is the father. *Palmer v. Palmer*, 42 Wash.2d 715, 258 P.2d 475. *See, also, Magarell v. Magarell*, 327 Mich. 372, 41 N.W.2d 898 [(1950)]; *Pilgrim v. Pilgrim*, 118 Ind.App. 6, 75 N.E.2d 159 [(1947)].

It is due the conscientious trial judge to say that in his painstaking memorandum opinion he relied upon a decision of an intermediate Ohio appellate court, *Gustin v. Gustin*, 108 Ohio App. 171, 161

N.E.2d 68 [(1958)]. This was before *Taylor v. Taylor*, Wash., 364 P.2d 444, pointed out that the Ohio decision has no place in our law.

*Farris*, 365 P.2d at 14.

The conclusion readily reached is not that our opinion is in error, but that in all probability it appears to be so, and to that extent it should be reconsidered by the Court as a whole.