782 P.2d 63

**STATE of Idaho, DEPARTMENT OF HEALTH & WELFARE, ex rel. George E. BOWLER, Plaintiff–Respondent,**

v.

**Sheila M. BOWLER, Defendant–Appellant.**

**No. 17314.**

Court of Appeals of Idaho.

Nov. 3, 1989.

funds had been provided to Sheila's former husband, George Bowler, on the behalf of two of the Bowlers' minor children while the children were residing with him. George was disabled and unemployed. Sheila and George had separated some time prior to January, 1980, when George first applied for public assistance. This aid was continued intermittently for the next four years during times when one or two of the children would reside with George. On June 4, 1984, Sheila and George were divorced. Physical custody of the children was awarded to Sheila. George was ordered to pay Sheila, when able, $50 per month per child as child support. No provision was made regarding Sheila's support obligation. The day after the divorce, on June 5, two of the children chose to reside with George and left Sheila's custody.

Three days prior to the divorce, on June 1, George had made an application for public assistance. This application was granted and George received public assistance. In total, the Department paid $3,952 prior to the divorce and $3,190 after the divorce until May, 1985, when the Department filed its amended complaint in this action.

A magistrate granted summary judgment in favor of the Department. Sheila appealed to the district court where the case was decided *de novo* on stipulated facts. The district judge also granted summary judgment against Sheila for reimbursement of public assistance provided up to the date of the divorce. However, the court denied the Department's claim for public assistance provided after the divorce. Judgment was entered against Sheila in the amount of $3,952, resulting in this appeal. The Department did not cross-appeal.

Sheila's arguments on the merits of the case may be summarized as two basic contentions: (1) that the Department failed to establish entitlement to reimbursement, and (2) that the district court erred in not determining that the Department was precluded from bringing suit for reimbursement under the terms of I.C. § 56–203B or the doctrine of res judicata. Also, she argues that the district court failed to ad-

John B. Kugler, Pocatello, for defendant-appellant.

Jim Jones, Atty. Gen., Margaret C. Lawless, Deputy Atty. Gen., argued, for plaintiff-respondent.

SWANSTROM, Judge.

This is an appeal by Sheila Bowler from a district court order granting summary judgment to the Department of Health and Welfare on a claim for reimbursement of public assistance furnished to dependent children. We affirm.

This action began in August, 1984, when the Department filed a complaint against Sheila Bowler under I.C. § 56–203B, seeking reimbursement of public assistance funds paid in the form of Aid to Families With Dependent Children (AFDC). These

dress a procedural issue on appeal from the magistrate division relating to her entitlement to an award of attorney fees in connection with discovery requests.

A moving party is entitled to summary judgment under I.R.C.P. 56(c) if it is clear from the evidence presented that there exists no genuine issue of material fact and, upon the given facts, the moving party is entitled to judgment as a matter of law. The facts must be construed in the light most favorable to the non-moving party; however, where, as here, no jury trial is requested, the court on summary judgment may choose the inferences which it deems most probable. *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982).

Sheila's first contention centers upon the language of several statutes, including I.C. §§ 56–203A, 56–203B, 32–1002, and 18–401. Under these sections, Sheila argues that the Department could not obtain reimbursement unless it proved, *inter alia*, George's eligibility to receive the public assistance furnished to him for the children. More particularly, relying upon certain language of I.C. § 56–203A, Sheila argues that the Department failed to show that her children were eligible for the AFDC assistance paid to George; therefore, the Department was a mere "volunteer" in making such payments and was not entitled to any reimbursement from her. In part, I.C. § 56–203A states:

> Whenever the department receives an application for public assistance on behalf of a child and it shall appear to the satisfaction of the department that said child has been abandoned by its parents, or that the child and one (1) parent have been abandoned by the other parent, or that the parent or other person who has a responsibility for the care, support or maintenance of such child has failed or neglected to give proper care or support to such child, the department shall take appropriate action under the provisions of this chapter, the abandonment or non-support statutes, or other appropriate statutes of this state to insure that such parent or other person responsible shall pay for the care, support or maintenance of said dependent child.

Sheila contends that no showing was made that she had "abandoned" or "neglected" her children at the times when the assistance was provided. We believe that her reliance upon this statute as the standard for determining a reimbursement obligation is misplaced. As we view § 56–203A, its purpose is to authorize the Department, when it becomes aware that a parent "has failed or neglected to give [a child] proper care or support," to take appropriate action under any of several available statutes "to insure that such parent ... shall pay for the care, support or maintenance of said dependent child." The statute neither speaks to *eligibility* for providing AFDC nor mentions the Department's right to seek *reimbursement*. Rather, this statute seems to implement a legislative policy to have appropriate action taken to compel defaulting parents to live up to their support obligations.

■ Idaho Code § 56–203B authorizes the Department to obtain reimbursement of "[a]ny payment of public assistance money made to or for the benefit of any dependent child...." The broad language of the statute does not invite a collateral attack on eligibility determinations. Moreover, the statute should be read in conjunction with the remedial language of I.C. §§ 32–1002 and 32–1003, which prescribe duties of support and establish parental liability for "necessaries" furnished to a child by a third party "in good faith" when a parent has "neglected" to do so. These statutes clearly do not limit a parent's duty of support by equating it with the child's eligibility for public assistance under the statutes and regulations governing the welfare system.

■ Nonetheless, even if we assumed such an equation in this case, the result would be the same. Aid to dependent children is governed by I.C. § 56–209, subsection (1) which provides:

> (1) Financial assistance under the aid to dependent children program shall be awarded on behalf of needy children who are residents of the state, and who are

deprived of parental care or support by reason of the death, continued absence from the home, or physical or mental incapacity of a parent. Such aid shall be awarded in accordance with department regulations which shall be consistent with the applicable titles of the social security act or other federal legislation affecting federal financial participation in the administration or award of such assistance.

"Aid to dependent children" is defined by I.C. § 56–201(*l*) to mean

money payments with respect to or in behalf of needy dependent children, who are deprived of parental care or support by reason of the death, continued absence from the home, or physical or mental incapacity of a parent;

. . . .

"Needy" shall mean the condition where a person or family does not have income and available resources in accordance with the provisions of section 56–210, Idaho Code. [I.C. § 56–201(q).]

Under § 56–209 and applicable regulations, if the Department determined that one or more of the Bowler children were "needy children" who were "deprived of parental support by reason of the physical or mental incapacity of a [either] parent," the Department was under a duty to provide financial aid upon application.

■ In the record before the district court on the motion for summary judgment were copies of George's applications for public assistance, warrants, and cancelled checks showing the payments made by the Department. In its answers to interrogatories the Department also stated that in processing George's application for assistance and in determining his eligibility, the Department relied upon certain federal and departmental regulations. This evidence stands unrefuted in the record. From this evidence the district court could—and implicitly did—infer that the Department properly exercised its duty to determine George's eligibility and to provide public assistance. Moreover, under these circumstances, we believe that the law affords a presumption of regularity in the perform-ance of official duties by public officers. *Horner v. Ponderosa Pine Logging,* 107 Idaho 1111, 695 P.2d 1250 (1985); *see* G. BELL, HANDBOOK OF EVIDENCE FOR THE IDAHO LAWYER, 431 (3rd Ed.1987). That presumption is unrebutted here. We hold that the record is sufficient to establish George's eligibility for the payments made by the Department.

■ Sheila next maintains that to prove entitlement to reimbursement, the Department must show that Sheila "wilfully" neglected to provide for her child or children during the times when the Department was furnishing AFDC. She argues that the Department produced no proof that she had "wilfully" abandoned or neglected the children at any time. However, we think the argument is misdirected. The statutes providing for parental reimbursement of assistance to a child do not contain the term "wilfully." That word comes from a criminal statute, I.C. § 18–401, which authorizes imposition of criminal penalties in certain cases of nonsupport. It may be that the state is put to more rigorous elements of proof if it seeks criminal penalties, but no such penalties are at issue here. "Wilfull[ness]" is not a required element of proof in a civil reimbursement case.

■ Sheila also argues that the district court erred in not finding that the Department's entire claim for reimbursement was barred by res judicata because the Department failed to assert its claim in the divorce proceeding. The district court accepted Sheila's argument in part, holding that after the divorce decree was entered the Department could have intervened to move for modification of the decree to change the provisions for future support in light of the fact that two of the children had moved in with George shortly after the divorce. *See* I.C. §§ 56–203B, 56–203C. Because the Department did not do this, the district court held that res judicata principles barred recovery of post-divorce assistance paid to George. The Department did not file any cross-appeal to challenge this ruling and we have no occasion to address the merits of it.

We hold, however, that the district court correctly determined that the Department could recover for payments made prior to the divorce. The divorce decree made no mention of any pre-divorce debt owed to the Department by either party. Res judicata, in the claim preclusion sense apparently urged here by Sheila, is generally limited to the parties to a prior adjudication. RESTATEMENT (SECOND) OF JUDGMENTS § 17 (1982). None of the exceptions to this general rule, enumerated in Chapter 4 of the RESTATEMENT, is applicable here. The question of the Department's right to reimbursement was not one which would have been raised by either spouse at the time the divorce decree was entered. Sheila contends that the Department should have learned of the pending divorce action when George applied for assistance on June 1, 1984, a Friday. Sheila obtained a default divorce on Monday, June 4. This hardly shows an opportunity on the part of the Department to intervene, much less a reason for imposing a claim-preclusion penalty for failure to intervene. Under these circumstances, the doctrine of res judicata should not bar the Department from later pursuing its claim for reimbursement.

■ Finally, Sheila contends that the district court erred by failing to decide an issue raised in the appeal from the magistrate's summary judgment order. In a "statement of issues" filed with the district court, the court was asked to decide whether the magistrate erred "in refusing to require [the Department] to fully comply with [Sheila's] discovery requests and in failing to award [Sheila] attorney fees necessitated in order to require motion to compel."

Some of the issues set forth in the "statement of issues" were obviously rendered moot once the parties and the district court agreed that the appeal would be handled on a *de novo* basis by the district judge. Because we have not been furnished either with a transcript of arguments made to the district judge or with copies of briefs submitted to him, we are unable to discern whether this issue was still a viable concern in the district court.

In any event, we have reviewed all of the record from the magistrate division which has been furnished to us in this appeal. We note that the magistrate granted a motion to compel the Department to furnish additional information which the Department had previously withheld upon the ground it was prohibited by statute from releasing without a court order. The record indicates the information was immediately furnished once the court required its production. As far as the record shows, no further requests for disclosure were made. Upon this record, we find no error or abuse of discretion by the magistrate in refusing to impose sanctions.

We have examined other issues raised by appellant and find them to be without merit. Accordingly, we affirm the district court judgment. Costs to respondent. No attorney fees on appeal.

WALTERS, C.J., and BURNETT, J., concur.