865 P.2d 999

STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, ex rel. Clifton MARTZ, Plaintiff–Respondent,

v.

June Marie REID, Defendant–Appellant.

No. 20219.

Court of Appeals of Idaho.

Dec. 30, 1993.

Norman L. Gissel, Coeur d'Alene, for appellant.

Larry EchoHawk, Atty. Gen., Margaret C. Lawless, Deputy Atty. Gen., Boise, for respondent. Margaret C. Lawless argued.

WALTERS, Chief Judge.

June Marie Reid appeals from an order of the district court upholding a judgment entered against her in the magistrate division. The judgment required Reid to reimburse the Idaho Department of Health and Welfare for $3,341 in Aid to Dependent Children (ADC) paid to her former husband, Clifton Martz, on behalf of their dependent minor child. At issue in this case is whether Idaho Code § 56–203B, which exempts ADC recipients from incurring any liability for child support paid by the state, unconstitutionally discriminates against parents, such as Reid, who are eligible for—but who do not apply to receive—such public welfare benefits. As explained below, we hold that Reid has not shown the statute violates her constitutional rights. Accordingly, we affirm.

### Facts

For purposes of this appeal, the following facts are not in dispute. Since 1976, June Marie Reid (Reid), has had physical custody of her son, Allen, born of her first marriage. Reid later married Clifton Martz (Martz) and they had a daughter, Quinn Michelle. When Reid and Martz divorced in 1982, Reid was granted custody of Quinn Michelle, and Martz was ordered to make child support payments of approximately $100 per month. Martz made payments for less than two years and then paid nothing. Meanwhile, Reid continued to work part-time to support herself and her children, using her sister and grandmother to babysit. In 1985, Reid married her current husband, Donald, a disabled Air Force veteran who remained at home with the children while Reid worked. Donald and Reid separated in the spring of 1988, but have not divorced.

In September, 1988, Quinn Michelle went to live with her father, Martz, while Allen remained with Reid. While Quinn Michelle resided with him, Martz applied for and received public assistance in the form of Aid to Dependent Children, (ADC),[1] which is dispensed by the Idaho Department of Health and Welfare, (the Department). As it made payments to Martz, the Department commenced billing Reid. The Department requested that Reid immediately begin making monthly installments of $154 to the Department (which it later increased to $250) as reimbursement for payments made to Martz. It is undisputed that while the Department was paying Martz (for Quinn Michelle) and billing Reid, Reid was supporting her minor son, Allen. Although Reid was employed, the level of support she was able to provide for Allen and herself was minimal. In fact, Reid's income was low enough that she was eligible for and would have qualified to receive ADC on Allen's behalf. However, because of her personal convictions and her perception of the stigma attached to those receiving public welfare, she has never applied for public assistance to help raise her children.

Notwithstanding its knowledge of these facts, the Department continued to send letters to Reid demanding that she reimburse the Department for the support it had paid on behalf of Quinn Michelle. When Reid did not pay, the Department brought this action seeking a judgment against her for the amount of its expenditures. Reid answered by alleging, *inter alia,* that Idaho Code § 56–203B, which exempts ADC recipients from their obligation to repay the Department, unconstitutionally discriminates against parents who qualify for but who do not seek public assistance. She asserted that this discrimination violates her right to equal protection of the law as guaranteed by the state and federal constitutions.

After conducting a trial upon essentially uncontroverted facts, the magistrate concluded that the statute did not violate Reid's equal protection rights. The magistrate further held that the Department was entitled to recover for the support it paid on behalf of Quinn Michelle prior to December, 1989, when Reid's divorce decree was modified by court order to provide that she would not be required to pay support for Quinn Michelle. Based upon its findings and conclusions, the magistrate entered judgment against Reid in the amount of $3,341.

█ Reid appealed to the district court, which upheld the magistrate's judgment. On further appeal to this Court, Reid does not contest the amount of the judgment, nor does she assert that any Idaho statute was improperly applied in her case. The only issue she raises is whether, by exempting parents from their obligation to reimburse the Department for child support solely on the basis of their status as ADC recipients, the provisions of I.C. § 56–203B deprive her of the right to equal protection of the law. Because this issue presents a question of law, we exercise free review. *State v. Breed,* 111 Idaho 497, 725 P.2d 202 (Ct.App.1986).

### Equal Protection

█ The equal protection clauses of the state and federal constitutions embrace the principle that all persons in like circumstances should receive the same benefits and burdens of the law. *See* U.S. CONST. amend. XIV, § 1; IDAHO CONST. art. I, § 2; *Bon Appetit Gourmet Foods, Inc. v. Department of Employment,* 117 Idaho 1002, 793 P.2d 675 (1989). Equal protection issues focus upon classifications within statutory schemes that allocate benefits or burdens differently among the categories of persons affected. *Breed,* 111 Idaho at 500, 725 P.2d at 205.

1. "Aid to dependent children" is defined by I.C. § 56–201 to mean:
   money payments with respect to or in behalf of needy dependent children, who are deprived of parental care or support by reason of the death, continued absence from the home, or physical mental incapacity of a parent[.]

   I.C. § 56–201(*l*). As used in this statute, "needy" means:
   the condition where a person or family does not have income and available resources in accordance with the provisions of section 56–210, Idaho Code.
   I.C. § 56–201(q).

■ In analyzing an equal protection claim under either the state or federal constitution, the first step is to identify the statutory classification under attack. The second step is to decide the applicable standard by which the legislative classification is to be judicially reviewed: "strict scrutiny," the "rational basis" test, or an intermediate standard of review. The third step is to determine whether the appropriate standard has been satisfied. *See Idaho Schools for Equal Educ. Opportunity v. Evans,* 123 Idaho 573, 850 P.2d 724 (1993); *Tarbox v. Tax Commission,* 107 Idaho 957, 695 P.2d 342 (1984).

The challenged classification in this case is found in I.C. § 56–203B. That statute provides, in relevant part:

> Any payment of public assistance money made to or for the benefit of any dependent child or children creates a debt due or owing to the department by the natural or adoptive parent or parents who are responsible for support of such children in an amount equal to the amount of public assistance money so paid.
>
> . . . .
>
> Debt under this section shall not be incurred(,) by[,] nor at any time be collected from *a parent or other person who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status.*

*Id.* (Emphasis added.) As applied to the instant case, this statute distinguishes between parents who receive public assistance on behalf of their children, and parents who do not apply for such benefits even though they are otherwise eligible to receive them.

■ Having identified the classifications drawn by I.C. § 56–203B, we next decide what equal protection standard to apply: "strict scrutiny," the "rational basis" test, or an intermediate standard of review. We observe that legislation relating to government welfare benefits are considered general economic and social welfare measures, and as such will be upheld under the "rational basis" test if statutory classifications advance legitimate government goals in a rational fashion. *See Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); *Johnson*

*v. Sunshine Mining Co.,* 106 Idaho 866, 684 P.2d 268 (1984). However, the more demanding "strict scrutiny" standard will be applied if the law dispenses benefits upon a suspect criterion or excludes classes of persons upon the basis of a status that deserves active protection by the judiciary. *See, e.g., Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (aliens); *New Jersey Welfare Rights Organization v. Cahill,* 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973) (illegitimates). Similarly, a classification will be subject to strict scrutiny if the welfare system has limitations which burden other fundamental constitutional values. *See, e.g., Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to travel).

■ Although not argued by Reid in this case, we observe that our courts have recognized an intermediate standard of scrutiny—the "means-focus" test—which applies to federal equal-protection claims where the legislation creates "unusually sensitive," although not necessarily "suspect" classes, or where "especially important" though not "fundamental" interests are at stake. *State v. Reed,* 107 Idaho 162, 170, 686 P.2d 842, 850 (Ct.App.1984). This standard also applies to state constitutional claims where the statute "blatantly discriminates" between classes. *Idaho Schools for Equal Educ. Opportunity,* 123 Idaho at 582, 850 P.2d at 733; *Jones v. State Board of Medicine,* 97 Idaho 859, 867, 555 P.2d 399, 407 (1976).

Reid urges that we apply the most rigorous standard, "strict scrutiny," to her case, arguing that the legislative classification interferes with the exercise of her fundamental right to parent. Specifically, she contends that by having to repay the Department for the support it furnished on behalf of her daughter, Quinn Michelle, she will no longer be able to provide for the financial needs of her dependent son, Allen.

■ We acknowledge that Reid has a fundamental right to make parenting decisions with regard to her children. *See Pierce v. Society of Sisters of the Holy Names of Jesus and Mary,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). However, we disagree

that such a right requires the state to relieve her of the obligation to support her children who reside with someone else. Withholding a welfare benefit from a class of persons who qualify for such benefits can be said to make them less able to exercise a variety of fundamental rights in society by decreasing their total resources. However, it is well settled that the state is not required to equalize the ability to exercise fundamental rights in the private sector with regard to persons of differing wealth. *See* J. NOWAK, R. ROTUNDA & J. YOUNG, CONSTITUTIONAL LAW, at 734 (1983). Moreover, we observe that Reid's failure to come within the purview of the statutory exemption results, not from the exercise of any parenting decision, but from her resolve to provide for her children's support without the aid of the state. While Reid's determination may be laudable, and, we think, deserving of legislative encouragement, her decision is one concerning her economic and welfare interests, not her parenting rights, and is not a protected "fundamental right." *Accord Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

■ We conclude that the strict scrutiny test does not apply in this case. Nor has Reid provided any argument or support that the intermediate "means-focus" analysis should be employed. Consequently, the standard of review which we will apply is the rational basis test.

■ As indicated above, the "rational basis" test requires only that the legislative classification bear a rational relationship to a legitimate government goal. *See Idaho Schools for Equal Educ. Opportunity*, 123 Idaho at 580, 850 P.2d at 731; *Tarbox*, 107 Idaho at 960, 695 P.2d at 345. The goals need not be specifically identified in the legislation itself, but may be those which we regard as reasonably conceivable. We conclude in this case that the legislative classification is rationally related to legitimate government goals. As we previously have held, the broad language of I.C. § 56–203B is to be read in conjunction with the remedial language of I.C. §§ 32–1002 and 32–1003, which prescribe parental duties of support and establish parental liability for necessities furnished to a child by a third party. *Department of Health and Welfare v. Bowler*, 116 Idaho 940, 782 P.2d 63 (Ct.App.1989). Thus viewed, I.C. § 56–203B reflects the state's goal of assuring that parents, and not taxpayers, bear the financial responsibility of supporting their children. *Cf. Department of Health & Welfare v. Engelbert*, 114 Idaho 89, 753 P.2d 825 (1988). At the same time, the statute manifests the legitimate interest of the state in providing assistance to those parents it determines are unable to provide for their children. These legislative goals are rationally served by limiting the statutory exemption to ADC recipients. Accordingly, the challenged statutory classification is valid.

### Conclusion

Having found no constitutional infirmity in the statutory classification, we affirm the district court's decision sustaining the judgment entered against Reid. Costs to respondent. No attorney fees are awarded on appeal.

LANSING and PERRY, JJ., concur.