90 P.3d 321

**STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, Plaintiff–Appellant,**

v.

**Richard A. HOUSEL and Kimberly C. Housel, Defendants–Respondents.**

**No. 28652.**

Supreme Court of Idaho, Boise, January 2004 Term.

April 28, 2004.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant. Jerold W. Lee argued.

Richard Alex Housel, pro se respondent.

SCHROEDER, Justice.

The Department of Health and Welfare ("Department") appeals from the district court's determination that the magistrate judge had no right or power to order child support payments between parents who were married and not legally separated.

## I.

## FACTUAL & PROCEDURAL BACKGROUND

At the time this action was initiated Richard Housel ("Richard") and Kimberly Housel ("Kimberly") were married and the parents of three minor children. Although the Housels were living separately, neither had filed for divorce or legal separation.

On October 1, 1998, the Department filed a complaint against Richard seeking an order of support for his three minor children. Kimberly was not mentioned in the complaint. The complaint alleged that Richard was the natural father of the three children and that he was capable of providing support. The complaint did not allege that the Department was providing assistance to the children or any matters concerning Richard's marital status or any other factual basis for the requested relief.

Richard was served the summons and complaint on October 23, 1998. On December 14, 1998, a magistrate entered a default order requiring Richard to make support payments for two of the three Housel children. Apparently, the third child was in Richard's custody.

On May 2, 2001, the Department moved to join Kimberly as a party defendant, alleging that Kimberly was the biological mother of the minor children and a party of interest with regard to the Department's petition for modification of child support, which had not yet been filed. Kimberly was joined as a party defendant on May 4, 2001.

On June 18, 2001, the Department filed its petition to modify the December 14, 1998, order based on an alleged substantial and material change in Richard's income. The petition was subsequently amended on July 31, 2001, alleging that Richard was the father of the minor children and that "all children were born of marriage between the parties." The amended petition did not, however, contain allegations regarding the Housels' current marital status or custody and support of their minor children, though it erroneously referred to a decree of divorce. The amended petition states, "THAT the JUDGMENT AND *DECREE OF DIVORCE* should be modified to increase the support obligation of the Defendant, RICHARD A. HOUSEL ...." (emphasis added). However, the Housels testified at the December 2, 2001, hearing that they were still legally married, and the record contains no indication that a divorce decree had ever been entered.

On September 13, 2001, the Department, Richard and Kimberly filed a stipulation to modify the order of support, stipulating that Richard was the natural father of the three children and that he should pay for their support.

On September 21, 2001, the magistrate ordered that a hearing be held to verify the Housels' marital status. This was a different magistrate than the one who had entered the December 14, 1998, order of support. On September 27, 2001, the Department moved to dismiss the amended petition without prejudice. A hearing was held on December 2, 2001, at which time the magistrate ordered, apparently *sua sponte,* that Richard's support obligation be modified to zero. The transcript of the hearing indicates that the reason for the order was the fact that Richard and Kimberly were neither divorced nor living in a state of legal separation. The magistrate did not rule on the Department's motion to dismiss. The Department filed its notice of appeal to the district court on November 7, 2001.

The district court perceived the issue to be whether a court had the right and power to order child support payments between parents who were legally married and not living

in a state of legal separation. The district court concluded that child support payments may not be ordered in such cases, and that the magistrate did not err in terminating its order of support, finding the order of December 14, 1998, to have been void in the first instance.

The Department appealed.

## II.

### STANDARD OF REVIEW

■ This Court reviews the decisions of the magistrate division independently, with due regard for the decision of the district court acting in its appellate capacity. *Stevens v. Stevens*, 135 Idaho 224, 227, 16 P.3d 900, 903 (2000).

■ A trial court's findings of fact will not be set aside unless clearly erroneous, which is to say that findings that are based upon substantial and competent, although conflicting, evidence will not be disturbed on appeal. *DeChambeau v. Estate of Smith*, 132 Idaho 568, 571, 976 P.2d 922, 925 (1999). The credibility and weight to be given evidence is in the province of the trial court, and this Court liberally construes the trial court's findings of fact in favor of the judgment entered. *Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 760, 992 P.2d 751, 755 (1999). However, when the issue is one of law, this Court exercises free review of the trial court's decision. *Id.*

■ Whether a judgment is void is a question of law. *Cramer v. Wade*, 985 P.2d 467, 470 n. 2 (Alaska 1999). This Court reviews questions of law de novo. *State, Dep't of Fin. v. Res. Serv., Co.*, 130 Idaho 877, 880, 950 P.2d 249, 252 (1997).

■ As a general principle, "this Court will refrain from considering issues not raised on appeal." *Clark v. State, Dep't of Health & Welfare*, 134 Idaho 527, 529 n. 1, 5 P.3d 988, 990 n. 1 (2000). Nevertheless, the magistrate's *sua sponte* modification of the December 14, 1998, support order raises two relevant issues which were not addressed by the Department in its initial appeal or briefing. Prior to oral argument the Court gave notice of its concerns and afforded the parties an opportunity to respond.

## III.

### THE MAGISTRATE ERRED IN ITS DETERMINATION THAT THE DECEMBER 14, 1998 CHILD SUPPORT ORDER WAS VOID

■ The transcript from the October 2, 2001, hearing indicates that the magistrate declared the prior order entered December 14, 1998, by another magistrate to be void because the Housels were still married and not legally separated when the order was entered. For a judgment to be considered void, there generally must be some jurisdictional defect in the court's authority to enter judgment, because the court lacks either personal jurisdiction or subject matter jurisdiction. *Catledge v. Transp. Tire Co., Inc.*, 107 Idaho 602, 607, 691 P.2d 1217, 1222 (1984) (citing *First Sec. Bank v. Neibaur*, 98 Idaho 598, 570 P.2d 276 (1977)). Additionally, a judgment is void when a "court's action amounts to a plain usurpation of power constituting a violation of due process." *Dragotoiu v. Dragotoiu*, 133 Idaho 644, 647, 991 P.2d 369, 371 (Ct.App.1998).

■ The threshold question is whether the magistrate court had acquired personal jurisdiction over Richard when the default judgment of December 14, 1998, was entered. "Personal jurisdiction refers to the court's authority to adjudicate the claim as to the person." 20 AM JUR. 2d *Courts* § 72 (1995). "Jurisdiction to enter a default is based upon the fact of service and, ordinarily, it will not be defeated by a showing of mere ministerial defects in the service or return of service." *Fisher v. Crest Corp.*, 112 Idaho 741, 744, 735 P.2d 1052, 1055 (Ct.App.1987). The record indicates that Richard was a resident of Idaho [1] on October 23, 1998, when he was served with both a summons and complaint. "[P]ersonal service of a defendant within the borders of the state of his residence is always sufficient to invoke the jurisdiction of a court of that state." *Jonasson v. Gibson*, 108 Ida-

---

1. The complaint alleged that Richard "is a person of legal age residing in the State of Idaho."

ho 459, 462, 700 P.2d 81, 84 (Ct.App.1985) (citation omitted). Richard was personally served—thus he was legally before the court when the default order was entered against him on December 14, 1998.

 The next question is whether the magistrate court lacked subject matter jurisdiction. "Subject matter jurisdiction is the right and abstract power of the tribunal to exercise power over cases of the kind and character of the one pending." *Young Elec. Sign Co. v. State*, 135 Idaho 804, 809, 25 P.3d 117, 122 (2001) (quoting *Knight v. Dep't of Ins.*, 124 Idaho 645, 649, 862 P.2d 337, 341 (Ct.App.1993)). "Lack of subject matter jurisdiction can be raised at any time." *Fisher v. Crest Corp.*, 112 Idaho 741, 744, 735 P.2d 1052, 1055 (Ct.App.1987) (citation omitted). This Court has narrowly construed the ability to void a judgment, however, on the basis of a defect in a court's subject matter jurisdiction. As the Court explained in *Gordon v. Gordon*:

> In the sound interest of finality, the concept of void judgment must be narrowly restricted. And it is.
>
> By jurisdiction over the subject matter the cases mean that the court must have jurisdiction or power to deal with the class of cases in which it renders judgment.... In brief, then, except for the rare case where power is plainly usurped, if a court has the general power to adjudicate the issues in the class of suits to which the case belongs its interim orders and final judgments, *whether right or wrong*, are not subject to collateral attack, so far as jurisdiction over the subject matter is concerned.

118 Idaho 804, 807, 800 P.2d 1018, 1021 (1990) (quoting 7 *Moore's Federal Practice and Procedure*, ¶ 60.25[2], p. 60–225–230 (1990)) (emphasis in original).

I.C. § 56–203A authorizes the Department to bring an action to establish, modify or enforce child support obligations in cases of abandonment or nonsupport. *See discussion infra.* By implication, courts have subject matter jurisdiction to entertain such actions. The magistrate had subject matter jurisdiction to enter the December 14, 1998, default order against Richard.

 During the October 2, 2001, hearing, the magistrate stated that the December 14, 1998 child support order was void since such an order could not be issued where the parents are married and not legally separated. Even if this statement were correct, the December 14, 1998 default order would be merely erroneous. "A judgment that incorrectly interprets a rule of law does not divest the court of jurisdiction over the subject matter or over the parties." *Gordon*, 118 Idaho at 807, 800 P.2d at 1021 (citing *Brown's Tie & Lumber Co. v. Kirk*, 109 Idaho 589, 710 P.2d 18 (Ct.App.1985)). "Jurisdiction is the power to decide erroneously as well as correctly." 20 Am.Jur. 2d *Courts* § 59 (1995). " 'If the judgment is erroneous, the unsuccessful party's remedy is to have it set aside or reversed in the original proceeding.' " *Brown's*, 109 Idaho at 591, 710 P.2d at 20 (quoting Restatement (Second) of Judgments § 17 cmt. d (1982)). Because no appeal was taken from the original order of child support, it was error for the magistrate to void the order some three years after the fact. Otherwise there would be no finality to judgments entered if the same or a different judge determined that there had been a misapplication of the law regardless of the time that had elapsed and the reliance that had been placed on the judgment. It is clear that the decision of the magistrate setting aside the earlier default judgment did so on the basis that it was void because of a perceived misapplication of the law. The magistrate erred in declaring the December 14, 1998, order void.

The determination that the December 14, 1998 was void and the modification of the December 14, 1998, support order is reversed.

## IV.

## THE DEPARTMENT WAS ENTITLED TO A DECISION ON ITS MOTION TO DISMISS ITS PETITION TO MODIFY THE DECEMBER 14, 1998 CHILD SUPPORT ORDER

 On July 31, 2001, the Department filed its amended petition for modification of the December 14, 1998, child support

order. The magistrate responded by ordering a hearing to verify the Housel's marital status. On September 27, 2001, the Department moved to dismiss its petition without prejudice. A hearing was subsequently held on October 2, 2001, at which time the magistrate ruled that the December 14, 1998, order was void without addressing the merits of the Department's motion to dismiss. Idaho Rule of Civil Procedure (I.R.C.P.) 41(a)[2] provides three methods for a plaintiff to dismiss an action. The first and second methods, covered by I.R.C.P. 41(a)(1), provide for dismissal by notice or by stipulation of the parties. The third method, contained in I.C.R. 41(a)(2), provides for dismissal by order of the court. " 'Generally, voluntary dismissal under I.C.R. 41(a)(1) is a matter of right; the plaintiff need not obtain the court's consent to do so.' " *Rohr v. Rohr*, 118 Idaho 689, 692, 800 P.2d 85, 88 (1990) (quoting *Rohr v. Rohr*, 118 Idaho 698, 702, 800 P.2d 94, 98 (Ct.App.1989)). " 'Unlike I.R.C.P. 41(a)(1), a motion to dismiss under I.R.C.P. 41(a)(2) is not a matter of right, but is discretionary with the trial court *both* as to whether a dismissal should be allowed, as well as to the terms and conditions to be imposed if allowed.' " *Id.* (emphasis in original)

In this case, no notice of dismissal or signed stipulation of dismissal was filed. Therefore, I.R.C.P. 41(a)(2) is the appropriate context in which to analyze the Department's motion to dismiss.

### A. Standard of Review

▮▮▮▮▮ "[A] motion to dismiss pursuant to I.C.R. 41(a)(2) is addressed to the sound discretion of the trial court and its ruling will not be overturned on appeal absent an abuse of discretion." *Rohr*, 118 Idaho at 693, 800 P.2d at 89 (citing *Hamilton v. Firestone Tire & Rubber Co. Inc.*, 679 F.2d 143 (9th Cir. 1982)). To prove an abuse of discretion, this Court applies a three-factor test. Those factors are: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Baxter v. Craney*, 135 Idaho 166, 169, 16 P.3d 263, 266 (2000) (citing *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

### B. The Department was entitled to a ruling on the Department's motion to dismiss its petition to modify the December 14, 1998 support order.

The Department's motion to dismiss was filed on September 27, 2001. It was not withdrawn prior to or during the October 2, 2001, hearing. The magistrate proceeded to the merits of the Department's petition to modify the existing support order without first addressing the Department's motion to dismiss. Once filed, the Department's motion to dismiss was entitled to consideration by the court. By declaring the Department's petition to modify void, the court effectively denied the Department's motion to dismiss without explanation. Such a *de facto* denial

---

**2.** I.R.C.P. 41(a) provides:

Rule 41(a)(1) Dismissal of Actions—Voluntary Dismissal—Effect Thereof—By Plaintiff—By Stipulation. Subject to the provisions of Rule 23(e), of Rule 73, and of any statute of the state of Idaho an action may be dismissed by the plaintiff *without order of court* (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion of summary judgment, whichever occurs first, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this state, of the United States, or of any state an action based on or including the same claim.

Rule 41(a)(2) Dismissal by Order of Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

amounts to an abuse of discretion. While the Department was not entitled to a dismissal as a matter of right, it was entitled to an articulated ruling on its motion to dismiss. That did not happen in this case. If the Department wishes to continue with the motion to dismiss, it is entitled to a hearing on remand.

## V.

## IDAHO CODE §§ 56–203A AND 56–203C(1)(a) AUTHORIZE THE DEPARTMENT TO SEEK MODIFICATION AND ENFORCEMENT OF A CHILD SUPPORT OBLIGATION

The initial judgment entered by default on December 14, 1998, was improperly declared void. It remains in effect. Consequently, the case must be remanded for consideration of the petition to modify that was filed June 18, 2001. This takes the Court to the question of statutory construction raised by the Department's motion and the magistrate's response.

### A. Standard of Review

The resolution of this issue involves the interpretation of a statute, which is a question of law to be reviewed de novo. *See V–1 Oil Co. v. Idaho State Tax Comm'n,* 134 Idaho 716, 718, 9 P.3d 519, 521 (2000); *Thomas v. Worthington,* 132 Idaho 825, 828, 979 P.2d 1183, 1186 (1999).

### B. The Department may petition to establish, modify or enforce a child support obligation regardless of the parents' marital status in cases of abandonment or nonsupport.

A duty to support and maintain minor children is universally recognized as resting upon the parents of such children. 59 AM.JUR. 2d *Parent and Child* § 45 (2002). It is well settled in Idaho that it is the duty of a parent to support his or her minor children. *Nielsen v. Nielsen,* 93 Idaho 419, 424, 462 P.2d 512, 517 (1969) (citing *In re Wilson's Guardianship,* 68 Idaho 486, 199 P.2d 261 (1948)). The issue in this case is the scope of the Department's authority to enforce this duty against parents who are married and not legally separated.

The Department's authority to enforce child support is found in Title 56, chapter 2, Public Assistance Law. Specifically, I.C. § 56–203A provides in relevant part:

Whenever the department receives an application for public assistance on behalf of a child and it shall appear to the satisfaction of the department that said child has been abandoned by its parents, or that the child and one (1) parent have been abandoned by the other parent, or that the parent or other person who has a responsibility for the care, support or maintenance of such child has failed or neglected to give proper care or support to such child, the department shall take appropriate action under the provisions of this chapter, the abandonment or nonsupport statutes, or other appropriate statutes of this state to ensure that such parent or other person responsible shall pay for the care, support or maintenance of said dependent child. The department may accept applications for support enforcement services on behalf of persons who are not recipients of public assistance and may take action as it deems appropriate to establish, modify or enforce support obligations against persons owing a duty to pay support. Action to establish support obligations may be taken under the abandonment or nonsupport statutes or other appropriate statutes of this state.

Statutory interpretation begins with " 'the literal words of the statute, and this language should be given its plain, obvious, and rational meaning.' " *Jen–Rath Co. v. Kit Mfg. Co.,* 137 Idaho 330, 335, 48 P.3d 659, 664 (2002) (quoting *Williamson v. City of McCall (In re Williamson* ), 135 Idaho 452, 455, 19 P.3d 766, 769 (2001)). Nothing in the plain language of I.C. § 56–203A conditions the Department's authority to act upon the marital status of the child's parents. Paragraph one imposes upon the Department an affirmative duty to "take appropriate action" following the receipt of an application for public assistance to ensure that all abandoned or neglected children receive support from the parent or person responsible for their care. The corollary, however, is that paragraph

one is not applicable where no application for public assistance has been received or there appears to be no abandonment or neglect. Further, the application of paragraph one is not affected by marital status.

The language of paragraph two is broader than paragraph one in that it allows the Department to "accept applications for support enforcement on behalf of persons who are not recipients of public assistance and may take action as it deems appropriate to establish, modify or enforce support obligations against persons owing a duty to pay support." Like paragraph one, paragraph two applies regardless of marital status. However, it is unclear from the statutory language of paragraph two whether the Department may petition to establish, modify or enforce a support obligation in cases where, as here, there are no allegations of abandonment or neglect. Therefore, further analysis must be applied to arrive at the legislative intent underlying I.C. § 56–203A. *See Lopez v. State, Indus. Special Indem. Fund,* 136 Idaho 174, 178, 30 P.3d 952, 956 (2001) (where a statute is ambiguous, this Court will attempt to ascertain the legislative intent.).

When interpreting a statute, the primary function of the Court is to determine and give effect to the legislative intent. *George W. Watkins Family v. Messenger,* 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990). The legislative purpose underlying the enactment of I.C. § 56–203A is "to improve the ability of the Department of Health and Welfare ... to collect child support owed by all *absent* parents." Statement of Purpose H.B. 301 (1975) (emphasis added). Clearly, "absent" is the operative word. Accordingly, I.C. § 56–203A implements "a legislative policy to have appropriate action taken to compel defaulting parents to live up to their support obligations." *See State, Dep't of Health & Welfare, ex rel. Bowler v. Bowler,* 116 Idaho 940, 942, 782 P.2d 63, 65 (Ct. App.1989). As a corollary, therefore, I.C. § 56–203A is inapplicable absent a showing of abandonment or nonsupport.

"Statutes must also be construed as a whole without separating one provision from another." *George,* 118 Idaho at 539, 797 P.2d at 1387–88. I.C. § 56–203B author-

izes the Department to obtain reimbursement of " '[a]ny payment of public assistance money made to or for the benefit of any dependant child....' " *Bowler,* 116 Idaho at 942, 782 P.2d at 65 (quoting I.C. § 56–203B). "[T]he statute should be read in conjunction with the remedial language of I.C. §§ 32–1002 and 32–1003, which prescribe duties of support and establish parental liability for 'necessaries' furnished to a child by a third party 'in good faith' when a parent has 'neglected' to do so." *Id.* "Thus viewed, I.C. § 56–203B reflects the state's goal of assuring that parents, and not taxpayers, bear the financial responsibility of supporting their children." *State, Dep't of Health & Welfare ex rel. Martz v. Reid,* 124 Idaho 908, 913, 865 P.2d 999, 1004 (Ct.App.1993) (citing *Dep't of Health & Welfare v. Engelbert,* 114 Idaho 89, 753 P.2d 825 (1988)). Consistent with this goal, I.C. 56–203C empowers the Department to "[p]etition to establish an order for support including medical support and support for a period during which a child received public assistance...." I.C. § 56–203C. When viewed as a whole, Title 56, chapter 2, Public Assistance Law articulates a desire on the part of the legislature to protect children against the effects of abandonment or neglect regardless of the marital status of their parents.

Lastly, " '[i]t is the duty of the courts, in construing statutes, to harmonize and reconcile laws whenever possible and to adopt the construction of statutory provisions which harmonize and reconciles them with other statutory provisions.' " *Sweitzer v. Dean,* 118 Idaho 568, 572, 798 P.2d 27, 31 (1990) (quoting *Sampson v. Layton,* 86 Idaho 453, 387 P.2d 883 (1963)). There is no requirement under the Idaho Code, either expressed or implied, mandating that an action for divorce or legal separation be joined with an action seeking child support. Moreover, the Department's authority to petition the court for an order of child support pursuant to I.C. § 56–203A can easily be harmonized with the various statutory provisions contained in the Idaho Code relating to child support. *See e.g.* I.C. § 5–245 ("Actions to collect child arrearages"); I.C. § 5–518 ("Service of process in child support mat-

ters"); I.C. §§ 7–1201 *et seq.* ("Enforcement of Child Support Orders"); I.C. §§ 7–1401 *et seq.* ("Family Law License Suspensions"); I.C. § 8–705 ("Wage assignment for support and care of delinquent child"); I.C. § 32–706 ("Child support"); I.C. § 32–710A ("Support payments paid to clerk or the department of health and welfare-Prosecuting attorney to enforce payments"); I.C. §§ 18–401 *et seq.* ("Abandonment or Nonsupport of Wife or Children").

Two conclusions may logically be drawn. First, the Department possesses authority, pursuant to I.C. § 56–203A, to enforce child support regardless of the parents' marital status. Second, the Department's authority to act pursuant to I.C. § 56–203A is limited, however, to situations involving abandonment or nonsupport. Therefore, the magistrate's determination that the Department lacked authority to enforce support obligations between parents who were married and not legally separated constituted error. The magistrate's ruling in this case would give children whose parents never marry greater rights to support than children whose parents are married and not legally separated. The ruling would deny a child of married parents support from an absent parent unless there is a pleading for divorce or legal separation. Under the magistrate's ruling the Department could not petition for current support against an absent parent if the parents were still in a validly existing marriage. There are valid reasons a parent may not seek a divorce or a decree of separation. The parent may not be able to afford such action. There may be religious constraints upon taking such actions. The magistrate's ruling would effectively require the Department to continually file cases for reimbursement of necessaries for state debt and to hunt down and serve with process the absent parent.

The original complaint filed in this case did not allege facts sufficient to invoke the Department's authority under I.C. § 56–203A in that it did not allege that the Housel children had been either abandoned or neglected by Richard. Nevertheless, given that the resulting default order was neither successfully appealed nor void in the first instance, the magistrate was obligated to give it legal effect. There remains pending the Department's motion to dismiss and the motion to modify the December 14, 1998, order. The case must be remanded for consideration of those matters.

# VI.

## CONCLUSION

The decisions of the district court and the magistrate court are reversed and the case is remanded for proceedings consistent with this opinion. No costs are awarded.

Chief Justice TROUT, Justices KIDWELL, EISMANN and BURDICK concur.