*1401
 
 OPINION
 

 Per Curiam:
 

 Cindy Hermanson (“Cindy”), the biological mother of James Hermanson (“James”), appeals from a district court order finding that David Hermanson (“David”) is the father of James. Cindy and David married when Cindy was six months pregnant with James in June, 1982. Cindy maintains that she informed David that she was pregnant with another man’s child. David admits that Cindy never told him that he was the father of her unborn child.
 

 James was born on October 12, 1982. The parties agree that things did not go well after James’s birth. Cindy stated that for the three years following James’s birth (1982-85), she moved in and out of David’s residence, seeking temporary housing in battered
 
 *1402
 
 women’s shelters, and staying with various friends. Cindy sought protective orders and direct assistance in battered women’s shelters on multiple occasions between 1982 and 1985.
 

 In October, 1985, Cindy separated from David and relocated to Iowa with James. Between 1985 and 1988, Cindy raised James alone while attending nursing school. She applied for and received welfare. In May, 1990, Cindy completed nursing school in Iowa. In August, 1990, David and Cindy discussed a reconciliation. Cindy returned to Las Vegas with James in October, 1990. The reconciliation attempt lasted only thirty days.
 

 Cindy filed for divorce in December, 1990. Cindy’s divorce complaint asserted that there were no issue of the marriage, although David’s name appeared on James’s birth certificate. She also asserted that David knew, and had always known, that he was biologically unrelated to the child. David denied Cindy’s assertions.
 

 In January, 1991, David filed a motion requesting that the child be named “the defacto child” of David “even if he is not the biological son of [David].” Cindy opposed the motion and requested blood tests as to paternity. A domestic relations referee heard the motion. In June, 1991, he filed his recommendation stating that “this case is similar to
 
 Frye
 
 v.
 
 Frye
 
 (Equitable Adoption), based on the conduct of the parties,” and that David “is found to be the real father of the child and should be declared the real father.” The referee also established a visitation schedule and ordered that David pay child support.
 

 Cindy and David each filed objections to the referee’s recommendation — she as to the “real father” recommendation, and he as to the child support amount. David subsequently withdrew his objection, and argued that the court should not order blood tests to determine paternity. In July, 1991, the district court sustained Cindy’s objection and referred the parties to a paternity hearing master with direction to order blood tests. The blood tests conclusively proved that David was not the father of James, and the parties so stipulated.
 

 In November, 1991, after further filings, the matter returned to the district court’s regular law and motion calendar. After hearing argument, and requesting additional written arguments, the district court concluded that Cindy failed to rebut a conclusive presumption in the California Evidence Code that James was the issue of her marriage to David. The district court further stated that equitable estoppel barred Cindy from denying that David was James’s father. Thus, the court held that David is James’s legal father.
 

 Cindy appealed the district court’s order to this court. This
 
 *1403
 
 court noted jurisdictional defects and ordered that appeal dismissed on September 14, 1992.
 

 Cindy and David’s divorce went to trial on April 1, 1993, on all matters other than paternity, and a decree was entered on August 25, 1993. It states that pursuant to the February 4, 1992 order, David is the father of James. The court awarded Cindy primary physical custody of James and it granted David joint legal custody of James and extensive visitation rights. Cindy filed a timely appeal.
 

 On appeal, Cindy argues that the district court erred because it applied California law instead of Nevada law to determine James’s paternity and because substantial evidence does not support a finding of equitable estoppel. We agree.
 

 The district court applied California Evidence Code section 621 to determine the paternity of James Hermanson. California Evidence Code section 621, at the time the Hermansons lived in California, provided:
 
 [1]
 

 Notwithstanding any other provision of law, the issue of a wife cohabitating with her husband, who is not impotent, is
 
 conclusively
 
 presumed to be legitimate.
 

 Cal. Evid. Code § 621 (West 1990) (emphasis added). The district court stated that there was no evidence on the record that David is either impotent or sterile. Because the parties were legally married and cohabitating at James’s birth, the district court applied this conclusive presumption to find that David is the father of James.
 

 This court has adopted the substantial relationship test to resolve conflict of law questions. Sievers v. Diversified Mtg. Investors, 95 Nev. 811, 603 P.2d 270 (1979). Under this test, the state whose law is applied must have a substantial relationship with the transaction; and the transaction must not violate a strong public policy of Nevada.
 
 Id.
 
 at 815, 603 P.2d at 273.
 
 [2]
 

 
 *1404
 
 California’s only relationship with this litigation is that James was born there and that David and Cindy resided there during the three years that they cohabitated during their turbulent marriage. The parties have not resided in California for almost ten years. California has no substantial interest in having former California Evidence Code section 621 applied in this paternity action in the Nevada court system especially in light of the fact that the California Legislature has repealed California Evidence Code section 621.
 
 [3]
 
 Under California’s current paternity statute, California Family Code section 7611, a paternity action may be brought “at any time.” Thus, the prevailing public policy in California is that there is no statute of limitations for paternity actions.
 

 Moreover, the district court’s application of California Evidence Code section 621 violates a public policy of Nevada. Under NRS 126.081, a paternity action is “not barred until 3 years after the child reaches the age of majority.” Nevada recognizes that minors have a right to have their paternity determined in a court of law. Therefore, Nevada affords them the opportunity to litigate their paternity for three years after the age of eighteen. In this case, James is presently twelve years old. He is a Nevada resident and should have the opportunity to have his paternity determined under Nevada law rather than precluded by a repealed California statute.
 

 Choice of law analysis dictates that Nevada law applies to the determination of James’s paternity. Because the district court applied California law, we conclude that the district court erred.
 

 The district court also determined that the doctrine of equitable estoppel bars Cindy from denying David’s paternity of James. The district court found that Cindy began a steady stream of affirmations that she was pregnant with David’s child soon after she learned that she was pregnant with James; Cindy named David as the father of James and placed his name on the birth
 
 *1405
 
 certificate; the parties have continuously held themselves to the public as the parents of James; Cindy applied for and received welfare benefits for dependent children by naming David as the father. The district court determined that “[e]ach of the preceding factors demonstrates a specific and repetitious pattern which Cindy has maintained to all concerned that David is the father of James.” Thus, the district court held that the doctrine of equitable estoppel bars Cindy from denying that David is the father of James.
 

 In Nevada, equitable estoppel has four elements:
 

 (1) the party to be estopped must be appraised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.
 

 Southern Nev. Mem. Hosp. v. State, 101 Nev. 387, 391, 705 P.2d 139, 142 (1985) (quoting Cheqer, Inc. v. Painters & Decorators, 98 Nev. 609, 655 P.2d 996 (1982)). Substantial evidence is that which “a reasonable mind might accept as adequate to support a conclusion.” State Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (citation omitted).
 

 Applying the test set forth above, in order for Cindy to be estopped from denying David’s paternity, the second element would require that Cindy asserted that David was the father and intended David to rely on her assertions. The facts simply do not support such a finding. In her affidavit, Cindy asserts that after she knew she was pregnant, Cindy informed David that she was pregnant with another man’s child. At a hearing before the referee, David admitted that Cindy never told him that he was the biological father of her unborn child.
 

 The third element for estoppel, the party asserting the estoppel must be ignorant of the true state of facts, would require that David was ignorant of the fact that he is not the biological father of James. David has admitted that he was told that he was not the child’s father before James was born. In his responding brief, David notes “the Respondent in this matter is not the blood father of the minor child.”
 

 In light of the above facts, we conclude that substantial evidence does not support a finding of the second and third elements for estoppel in this case.
 

 Furthermore, David’s contact with James and financial support of James do not support the application of the doctrine of estop-pel. David’s contact with James for the three years after his birth
 
 *1406
 
 was intermittent. Cindy moved in and out of David’s residence seeking temporary housing in battered women’s shelters from 1982 until 1985. Cindy estimates that the parties actually cohabi-tated a total of nine months after James’s birth. David testified that he actually cohabitated with James for about two years total during the child’s lifetime.
 

 In addition, David did not pay any significant sums for James’s support. From 1985 to 1988, Cindy raised James alone while attending nursing school in Iowa. She applied for and received welfare benefits. David paid a total of $125.50 in child support for the years Cindy was on welfare.
 

 In Topaz Mutual Co. v. Marsh, 108 Nev. 845, 853, 839 P.2d 606, 611 (1992), this court stated, “[e]quitable estoppel functions to prevent the assertion of legal rights that in equity and good conscience should not be available due to a party’s conduct.” This statement reflects that the doctrine of estoppel is grounded in principles of fairness. This case does not warrant the application of the doctrine of estoppel. Instead of ensuring fairness, estoppel works in this case to unjustly deprive Cindy from disputing the presumption of paternity. The issue of David’s paternity of James should be reached on its merits under Nevada law, not determined by a repealed California statute nor by the doctrine of equitable estoppel.
 

 Furthermore, we conclude that the doctrine of equitable adoption enunciated in Frye v. Frye, 103 Nev. 301, 738 P.2d 505 (1987), and the myriad of other psychological theories of parentage that the parties mention in order to determine paternity are inapplicable.
 

 Nevada’s paternity statute, NRS 126.051, states, in pertinent part:
 

 1. A man is presumed to be the natural father of a child if:
 

 (a) He and the child’s natural mother are or have been married to each other and the child is born during the marriage ....
 

 3. A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence. . . . The presumption is rebutted by a court decree establishing paternity of the child by another man.
 

 NRS 126.051 provides for a
 
 rebuttable
 
 presumption of paternity and is the applicable statute in this matter. We reverse the district court’s order finding that David is the father of James and
 
 *1407
 
 remand this case to the district court for further proceedings consistent with this opinion.
 
 [4]
 

 [1]
 

 In Michael H. v. Gerald D., 491 U.S. 110 (1989), the United States Supreme Court addressed the constitutionality of the conclusive presumption of paternity under California Evidence Code section 621. In a five-four decision containing five separate opinions, the Court held, after balancing the private interests of the parties with the interests of the state, that a conclusive presumption of paternity does not deny due process to a putative father.
 
 Id.
 
 at 430. However, several members of the court disagreed. Michael H. v. Gerald D., 491 U.S. at 138-64 (Brennan, J., Marshall, J., Blackmun, J., and White, J., dissenting).
 

 [2]
 

 Some courts have applied the “origin of domicile” doctrine to determine that the law of the child’s birthplace is the applicable law for paternity
 
 *1404
 
 actions.
 
 See
 
 In Re Estate of Dauenhauer, 535 P.2d 1005 (Mont. 1975); Kowalski v. Wojtkowski, 116 A.2d 6 (N.J. 1955). However, these cases reflect a traditional conflict of laws approach which Nevada has rejected by adopting the more modern substantial relationship test.
 

 [3]
 

 The California Legislature repealed California Evidence Code section 621 — effective January 1, 1994. Thus, California’s policy position on this conclusive presumption of paternity has changed. Under California’s and Nevada’s current paternity statutes, the presumption that a child born to a legally married couple is a child of the marriage is
 
 rebuttable.
 

 [4]
 

 The district court awarded David joint legal custody of James because of its earlier determination that David is the father of James. Since we reverse the district court’s order finding that David is the father of James, it follows that the district court’s award of joint legal custody to David is also reversed.