**Kenneth M. OSTERKAMP, Appellant,**

v.

**Kattaryna STILES, Appellee.**

No. S–13497.

Supreme Court of Alaska.

June 25, 2010.

Mary A. Gilson and Allison E. Mendel, Mendel & Associates, Anchorage, for the Appellant.

Robert C. Erwin and Roberta C. Erwin, Robert C. Erwin, LLC, Anchorage, for the Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Kenneth Osterkamp appeals the denial of

his petition to adopt Simon [1] on the grounds that Simon's adoptive mother, Kattaryna Stiles, should be equitably estopped from withholding her consent. Because it is undisputed that Kattaryna never unconditionally agreed that Ken could adopt Simon, we affirm the superior court's denial of the petition for adoption.

## II. FACTS AND PROCEEDINGS

Kenneth Osterkamp and Kattaryna Stiles lived together as domestic partners from 2003 until they separated in March 2007. Simon was born on August 25, 2005 and is an Indian child under the Indian Child Welfare Act (ICWA).[2] On September 1, 2005, the Office of Children's Services (OCS) placed Simon in foster care with Kattaryna and Ken.

Ken and Kattaryna began taking steps to adopt Simon in early 2006, though they had begun to experience difficulties in their relationship. They dispute whether they initially decided to adopt Simon as a couple, but it is undisputed that a home study for joint adoption was conducted in the spring of 2006. Kattaryna claims she and Ken initially agreed that she would adopt Simon on her own and that the possibility of a joint adoption arose after a social worker advised her to put Ken's name on the home study in case they later decided to adopt together. Kattaryna admits that Ken wanted to jointly adopt Simon by late 2005. Ken claims that he and Kattaryna mutually agreed to jointly adopt Simon in late 2005 and that the possibility of Kattaryna adopting Simon by herself came up in the summer of 2006 after a period of conflict in their relationship. The parties agree that Kattaryna's concern regarding a joint adoption was that if their relationship did not work out, Simon would grow up in a "broken home."

The adoption process moved forward in Kattaryna's name only. Ken understood that he would adopt Simon at a later date if the parties' relationship improved; Kattaryna claims that the agreement was that Ken would only adopt Simon if the parties eventually got married. Both parties understood that Ken would continue to have an important role in Simon's life as a "beloved uncle" whether or not Ken adopted him. And both parties testified that Kattaryna never unconditionally consented to Ken adopting Simon.

On December 28, 2006, a hearing was held on Kattaryna's adoption petition and Superior Court Judge Sharon Gleason granted it.[3] At the time of this hearing, Simon was sixteen months old and had spent all but one week of his life living with Ken and Kattaryna. Ken attended the adoption hearing and did not raise any objections to Kattaryna adopting Simon in her individual capacity. Nor did Ken attempt to reserve any post-adoption rights.

From the time OCS placed Simon with Ken and Kattaryna, Kattaryna encouraged a parent-child relationship between Ken and Simon. She referred to Ken as "Dad" when speaking around Simon and encouraged Ken to see himself as Simon's father and to develop a parental bond with him. Kattaryna and Ken held themselves out to be a family before the adoption. In a 2005 photo album Kattaryna put together entitled "A Year of Change," there are photo captions such as "Bath time with Dad" and multiple photos depicting Ken, Kattaryna, and Simon as a family. Another photo album Kattaryna made includes references to Ken's nieces and nephews as Simon's "cousins" and captions such as "[Simon] Joined our family ... Lucky, Lucky, us," "Reading with dad," and "[Simon] with Dad." Ken also received a 2006 Father's Day card made by Simon at his daycare.

The parties continued to live together after the adoption, Kattaryna continued to refer to Ken as Simon's "dad," and Simon began calling Ken "daa." In January 2007, Kattaryna

1. This opinion uses a pseudonym to protect the minor's privacy.

2. 25 U.S.C. § 1903(4) (2006).

3. Simon's biological mother's parental rights were terminated and his biological father voluntarily relinquished his parental rights. The tribes with which Simon is affiliated received notice of the adoption hearing and filed no objection; the court found good cause to deviate from ICWA's placement preferences.

executed a will naming Ken as Simon's guardian and conservator in the event of her death and describing her "immediate family" as Simon and "my domestic partner" Ken. According to Ken's brother Tom, nothing following the adoption indicated that Ken's relationship with Simon had changed. But Kattaryna claims that on more than one occasion after the adoption she asked Ken to help with Simon and he responded, "[H]e's not my son, I don't have to help."

Kattaryna separated from Ken in March 2007. The parties initially agreed Ken would have visitation with Simon, but this ended not long after their separation.

Ken filed a complaint for joint custody of Simon a month after the parties separated. Superior Court Judge Jack Smith held a bench trial and ruled that Ken had not established psychological parent status as of the time he filed his complaint for custody, and did not prove by clear and convincing evidence that denying him custody would be clearly detrimental to Simon. Judge Smith did not reach the issue of visitation and Ken has had no contact with Simon since Judge Smith entered his decision in the custody action in August 2008. Ken appealed Judge Smith's decision, and we affirmed.[4] We also concluded that ordering third party visitation over Kattaryna's objection was not in Simon's best interests.[5]

Shortly before the custody case went to trial, Ken filed the petition for adoption that is the subject of this action. The petition alleged that Kattaryna "previously provided verbal consent [to Ken's adoption of Simon]" and that she took "actions consistent with giving consent." Ken's petition acknowledged that the consent of a child's parent would typically be required in order for an adoption to proceed,[6] but he argued that under AS 25.23.050(a)(8) Kattaryna's consent should not have been required because she was unreasonably withholding it.[7]

Kattaryna filed a motion to dismiss the adoption petition on the grounds that her consent is required by AS 25.23.040(a)(1) and that the exception in AS 25.23.050(a)(8) does not apply to adoptive parents. Ken opposed the motion to dismiss, primarily arguing that the court should dispense with the requirement for Kattaryna's consent on equitable estoppel grounds.[8] Judge Gleason denied Kattaryna's motion to dismiss, reasoning that if Ken could prove the allegations in his petition, he might be entitled to a ruling that Kattaryna should be equitably estopped from withholding her consent to this adoption. After requesting supplemental briefing on the issue of whether the doctrine of equitable estoppel can dispense with the statutory requirement that a mother consent to her child's adoption, Judge Gleason ruled that equitable estoppel might be applicable in this context. She then held an evidentiary hearing on the narrow issue of whether Kattaryna had, in fact, consented to Ken's adoption of Simon.

Judge Gleason heard testimony offered by both parties and found that Kattaryna never made an unconditional statement or assertion that she would consent to Ken adopting Simon. On March 27, 2009, Judge Gleason dismissed the adoption petition and awarded Kattaryna attorney's fees pursuant to Alaska Civil Rule 82 in the amount of $5,688.75. Ken appeals.

### III. STANDARD OF REVIEW

█ We review questions of law de novo,[9] applying our independent judgment and

---

4. *Osterkamp v. Stiles,* 235 P.3d 178 (Alaska 2010).

5. *Osterkamp v. Stiles,* 235 P.3d 178 (Alaska 2010).

6. AS 25.23.040(a)(1) provides that "[u]nless consent is not required under AS 25.23.050, a petition to adopt a minor may be granted only if written consent to a particular adoption has been executed by ... the mother of the minor."

7. AS 25.23.050(a)(8) provides that "(a) Consent to adoption is not required of ... (8) [the] guard-

ian or custodian specified in AS 25.23.040(a)(3) or (4) ... who, after examination of the guardian's or custodian's written reasons for withholding consent, is found by the court to be withholding consent unreasonably."

8. Ken did not counter Kattaryna's argument that the exception to requiring consent in AS 25.23.050(a)(8) does not encompass adoptive parents.

9. *See Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

adopting the rule of law that is "most persuasive in light of precedent, reason and policy." [10]

In an adoption case, we review the superior court's factual findings under the "clearly erroneous" standard.[11] A finding is clearly erroneous when "a review of the entire record leaves us firmly convinced that a mistake has been made." [12]

## IV. DISCUSSION

### A. Equitable Estoppel

"The general elements required for the application of the doctrine of equitable estoppel are the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice." [13] We have not decided whether this doctrine applies in the context of a petition for adoption,[14] though this question was presented in *C.T. v. J.S.*[15] There, the superior court ruled that a mother was equitably estopped from withholding her consent to the stepfather's petition to adopt her child.[16] The basis for the superior court's estoppel ruling was the mother's history of representations to the child that the stepfather was the child's biological father.[17] We did not reach the legal question of whether equitable estoppel can be applied to prevent a parent from withholding consent to an adoption petition because the evidence established that the mother "never represented that she would consent to [the stepfather] adopting [her biological son]." [18]

We reach the same result in this case, for the same reason.[19] It is uncontested that Kattaryna never unconditionally represented to Ken that she would consent to him adopting Simon.[20] To the contrary, both Ken and Kattaryna understood that if their relationship did not improve—which it has not—then Kattaryna would not consent to Ken adopting Simon.[21]

**10.** *Kinnard v. Kinnard,* 43 P.3d 150, 153 (Alaska 2002).

**11.** *See In re Adoption of L.E.K.M.,* 70 P.3d 1097, 1100 (Alaska 2003).

**12.** *Id.* (internal citations and quotations omitted).

**13.** *Jamison v. Consol. Utils., Inc.,* 576 P.2d 97, 102 (Alaska 1978).

**14.** We have held that equitable estoppel applies in the context of equitable adoption for purposes of intestate succession, as well as in the context of establishing paternity for child support purposes. *See Calista Corp. v. Mann,* 564 P.2d 53, 61–62 (Alaska 1977) ("[T]he doctrine of equitable adoption is an appropriate vehicle which can be utilized in intestate succession cases to avoid hardship created in part by the diversity of cultures found within this jurisdiction."); *Wright v. Black,* 856 P.2d 477, 481 (Alaska 1993) ("We conclude that the application of equitable estoppel to paternity cases advances sound policies in the law, and therefore adopt its application."), *overruled on other grounds by B.E.B. v. R.L.B.,* 979 P.2d 514 (Alaska 1999).

**15.** 951 P.2d 1199 (Alaska 1998).

**16.** *Id.*

**17.** *Id.*

**18.** *Id.* at 1200.

**19.** We do not reach the question of whether equitable adoption can be applied to prevent a parent from withholding consent to an adoption petition both because it is not necessary to resolve this case and because Kattaryna did not cross-appeal on this issue. But we note that apparently no jurisdiction has applied equitable adoption to establish parental rights. *Cf. Hermanson v. Hermanson,* 110 Nev. 1400, 887 P.2d 1241, 1245 (1994) (holding that the doctrine of equitable adoption does not apply in an action to determine custody); *Pierce v. Pierce,* 198 Mont. 255, 645 P.2d 1353, 1355 (1982) (holding that the doctrine of equitable adoption has no application to an action in which a stepfather seeks custody against the wishes of the child's mother); *Trevino v. Garcia,* 627 S.W.2d 147, 148–49 (Tex. 1982) (holding that adoption by estoppel is inapplicable to establishing custodial rights).

**20.** During the evidentiary hearing, in response to the question, "So Kattaryna never said to you unequivocally, Ken, I con[sent] to your adoption of [Simon]?" Ken responded, "Kattaryna has never said that."

**21.** Ken stated during the evidentiary hearing that his agreement with Kattaryna, both before and after her adoption of Simon, was "that things were rocky, we would work to improve them and then *if they didn't obviously that would be a problem,* but if they did then I would adopt." (Emphasis added.) Ken also agreed that Kattaryna said to him, "[W]e're having problems in our relationship, I want to adopt alone. If our relationship improves you can adopt [Simon] at a later date."

Ken presents substantial evidence that Kattaryna held him out to be Simon's father, but this is insufficient to meet the required showing for equitable estoppel. As was the case in *C.T. v. J.S.*, "no one suggests that [the legal mother] represented, at any time, that she would consent to [the petitioner] adopting [her child]."[22] Uncontradicted evidence established that Ken always understood that adopting Simon was contingent on Ken's relationship with Kattaryna improving. The evidence does not support Ken's equitable estoppel argument.[23]

### B. Attorney's Fees

Ken's only argument against the superior court's award of attorney's fees is that its underlying decision was erroneous. Because we affirm the superior court's denial of Ken's petition for adoption we also affirm its award of attorney's fees.

### V. CONCLUSION

We AFFIRM the superior court's denial of the petition for custody and its award of attorney's fees.

---

**22.** 951 P.2d at 1200.

**23.** The parties also dispute which form of estoppel should be applied in this case—equitable estoppel or quasi-estoppel. But Ken's claim fails under either form of estoppel. Quasi-estoppel "precludes a party from taking a position inconsistent with one [s]he has previously taken where

circumstances render assertion of the second position unconscionable," *Jamison v. Consol. Utils., Inc.*, 576 P.2d 97, 102 (Alaska 1978). It is uncontested here that Kattaryna never agreed to Ken adopting Simon unless the parties' relationship improved.