IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38026

| IN THE MATTER OF JANE DOE, A CHILD UNDER EIGHTEEN YEARS OF AGE. | ) ) ) | |
|---|---|---|
| IDAHO DEPARTMENT OF HEALTH & WELFARE and JUDY HOFFMAN, Guardian Ad Litem, | ) ) ) ) | 2010 Opinion No. 87 |
| Petitioners-Respondents, | ) ) ) | Filed: December 20, 2010 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| JOHN (2010-25) DOE, | ) ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Howard D. Smyser, Magistrate.

Decree terminating parental rights, <u>affirmed</u>.

Williams Law Office, Chtd., Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Tom Baird, Deputy Attorney General, Twin Falls, for respondent, Department of Health and Welfare.

Jamie LaMure, Kimberly, for respondent, Judy Hoffman.

_____

MELANSON, Judge

John Doe appeals from the magistrate's decree terminating the parental rights of Mother and Father to their daughter, Jane Doe.  Specifically, John challenges the magistrate's determination that John was not a proper party to the termination proceedings because he did not possess parental rights subject to termination.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

At the time of Jane's birth, John and Mother were in a relationship.  John is listed on Jane's birth certificate as her father.  In 2005, the Idaho Department of Health and Welfare

initiated a child protective proceeding involving Jane, due to John and Mother's use of methamphetamine. John and Mother subsequently agreed to allow Jane's grandparents to become her legal guardians. Six months later, Jane's grandmother died and Jane's grandfather relinquished his guardianship of Jane because he could no longer care for her. Jane was placed in foster care while the Department conducted a six-month investigation to determine a proper placement for Jane. After the investigation, Jane was returned to the custody of John and Mother in 2007. John and Mother later ended their relationship and separated. Sometime after their separation, John and Mother stipulated that John would have primary legal custody of Jane. Pursuant to the stipulation, the magistrate issued a custody order in favor of John.[1]

In 2009, the Department initiated another child protective action involving Jane. At that time, John and Mother lived in separate units of the same apartment complex. Jane spent time at both John's home and Mother's home. While at Mother's apartment, Jane indicated that "Daddy" had sexual contact with her.[2] Mother notified the authorities, and Jane was placed in the custody of the Department pending an adjudicatory hearing.

At the adjudicatory hearing, the magistrate determined that it was in Jane's best interest to remain in the custody of the Department and required John and Mother to comply with a case plan for reunification with Jane. Mother declined to participate in the case plan. John chose to participate and began attending counseling and treatment for his mental health issues and visited Jane weekly. As part of the case plan, John was required to submit to a paternity test, which later determined that he was not Jane's biological father.

The Department initiated termination proceedings and identified John and Father as Jane's possible fathers and alleged that John had been excluded as the biological father by DNA testing. Mother stipulated to the termination of her parental rights and expressed her desire to have Jane adopted by one of her relatives. Father did not appear at the termination hearing. The Department requested that John be dismissed as a party to the termination proceedings because he did not meet the definition of "parent" under I.C. § 16-2002(11). The magistrate treated the

---

[1]     This custody order is not included in the record on appeal. However, the magistrate referred to the custody order during the termination proceedings and recognized that such an order had been issued in favor of John pursuant to a stipulation.

[2]     The Department investigators apparently believe Jane must have been referring to John. The record does not disclose whether John actually committed such acts.

Department's request as a motion for summary judgment, found that John was a proper party to the action, and allowed him to participate in the hearing. However, in its memorandum decision and in its decree terminating Mother and Father's parental rights, the magistrate determined that John did not meet the statutory definition of a parent and, therefore, was not a proper party to the termination action. John appeals.

## II.

## STANDARD OF REVIEW

This Court exercises free review over a trial judge's conclusions of law. *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 605, 38 P.3d 1258, 1261 (2002). The determination of the meaning of a statute and its application is a matter of law over which this Court exercises free review. *Woodburn v. Manco Prods., Inc.,* 137 Idaho 502, 504, 50 P.3d 997, 999 (2002).

In an action to terminate parental rights, an appellate court will not disturb the trial court's findings unless they are not supported by substantial and competent evidence. *Roe Family Servs. v. Doe*, 139 Idaho 930, 934, 88 P.3d 749, 753 (2004). Only clearly erroneous findings will be overturned. *Opportunity*, 136 Idaho at 605, 38 P.3d at 1261.

## III.

## ANALYSIS

John asserts that the magistrate erred when it determined that John was not a parent for purposes of the parental termination proceedings involving Jane. John argues that he is a parent under the equitable doctrines of *in loco parentis* and equitable adoption (also referred to as adoption by estoppel). In addition, John contends that the equitable doctrine of judicial estoppel should prevent the Department from objecting to John's participation in the parental termination proceedings. Finally, John argues that his constitutionally protected rights of access to the courts and the right to parent have been violated.

### A.    John's Status as a Parent

John contends that he comes within the purview of the Termination of Parent and Child Relationship Act, I.C. §§ 16-2001 to 16-2014. In the alternative, John asserts that he has parental rights subject to termination under the equitable doctrines of *in loco parentis* and equitable adoption.

### 1. Statutory definition

Idaho Code Section 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) the parent has abandoned the child; (b) the parent has neglected or abused the child; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007).

Idaho Code Section 16-2002(11) states in relevant part that a "parent" is either the adoptive father, the biological father of a child conceived or born during the father's marriage to the mother, or the unmarried biological father whose consent to an adoption of the child is required pursuant to I.C. § 16-1504. Idaho Code Section 16-2002(12) defines a "presumptive father" as a "man who is or was married to the birth mother and the child is born during the marriage or within three hundred (300) days after the marriage is terminated."

During the termination hearing, John did not argue that he and Mother were married or that he was Jane's adoptive father. In addition, the paternity test established that John was not Jane's biological father. Therefore, substantial and competent evidence supports the magistrate's determination that John was never married to Mother and was not Jane's adoptive or biological father. As a result, the magistrate did not err when it determined that John did not meet the statutory definition of a "parent" or "presumptive father" under the Termination of Parent and Child Relationship Act.

### 2. Equitable parental rights

In the alternative, John argues that the magistrate erred when it determined that John did not possess equitable parental rights under the doctrines of *in loco parentis* and equitable adoption. The doctrine of *in loco parentis* is defined as "relating to, or acting as a temporary guardian or caretaker of a child, taking on all or some of the responsibilities of a parent." BLACK'S LAW DICTIONARY 803 (8th ed. 2004). The Idaho Supreme Court has held that a couple stood *in loco parentis* to a child once the Department transferred custody of the child to the couple. *Craven v. Doe*, 128 Idaho 490, 493, 915 P.2d 720, 723 (1996). Due to the couple's

4

status as prospective adoptive parents acting *in loco parentis*, the Court held the couple had standing to file a petition for the termination of the biological parents' rights to the child under I.C. § 16-2004. *Craven*, 128 Idaho at 493, 915 P.2d at 723. Idaho Code Section 16-2004 specifically permits a person standing *in loco parentis* to file a petition for termination of parental rights.[3]

John asserts that, like the couple in *Craven*, he is a nonbiological parent who should be permitted to defend his parental rights in a termination proceeding. However, the Court's holding in *Craven* narrowly applies to a party's ability to file a petition for termination of parental rights. *Craven* does not stand for the proposition that a party acting *in loco parentis* possesses parental rights subject to termination under I.C. § 16-2005.

John also argues that he possesses parental rights under the doctrine of equitable adoption. The doctrine of equitable adoption applies equity to create a status which confers certain benefits to a child, such as child support or an inheritance. *Poncho v. Bowdoin*, 126 P.3d 1221, 1226-28 (N.M. Ct. App. 2005). The doctrine allows a child to enjoy part of the advantage of an adoptive status in cases where no formal adoption has taken place. *Id*. For example, in certain jurisdictions, the doctrine of equitable adoption allows a child to receive an inheritance from a presumed adoptive parent, even if the parent had yet to formalize the adoption prior to his or her death. *See In re Estate of Ford*, 82 P.3d 747, 753-54 (Cal. 2004) (law of equitable adoption in intestate succession case requires proof of intent to adopt); *see also Osterkamp v. Stiles*, 235 P.3d 193, 196 n.14 (Alaska 2010) (equitable adoption doctrine applied in Alaska in intestate succession and paternity cases).

It appears that Idaho appellate courts have not applied or addressed the doctrine of equitable adoption. Courts in other jurisdictions that recognize equitable adoption in some cases

---

[3] Idaho Code Section 16-2004 states:

> A petition may be filed by:
> a.    Either parent when termination is sought with respect to the other parent.
> b.    The guardian of the person or the legal custodian of the child or person standing in loco parentis to the child.
> c.    An authorized agency.
> d.    Any other person possessing a legitimate interest in the matter.

have declined to apply the doctrine in child custody or parental rights cases. *See Pierce v. Pierce*, 645 P.2d 1353, 1355 (Mont. 1982); *Hermanson v. Hermanson*, 887 P.2d 1241, 1245-46 (Nev. 1994). Further, the cases that John relies upon in support of the application of equitable adoption involve a party's refusal to pay child support. *See Frye v. Frye*, 738 P.2d 505 (Nev. 1987); *Sargeant v. Sargeant*, 495 P.2d 618 (Nev. 1972). These cases are distinguishable from the facts of this case.

Idaho does not recognize equitable adoption, and we decline to apply the doctrine here. Unlike other cases where courts have recognized equitable adoption, John did not initiate adoptive proceedings involving Jane, and this case does not involve Jane's portion of John's inheritance or a request for child support. Therefore, John has failed to establish that the magistrate erred by determining that John possessed no equitable parental rights subject to termination in this matter. In addition, because we conclude that John did not possess parental rights subject to termination and was not a proper party to the termination proceedings, we will not address John's argument that the Department is estopped from objecting to John's participation in the termination action.

## B.     Constitutional Arguments

John argues that the statutory scheme for termination of parental rights denies him his constitutionally protected right of access to the courts. Idaho Code Section 16-1604(2) states in relevant part that, "in the event there are conflicting orders from Idaho courts concerning the child, the child protection order is controlling." John asserts that the magistrate's decision to award custody of Jane to the Department conflicted with an order granting John legal custody to Jane after he and Mother separated. Therefore, he argues, I.C. § 16-1604(2) deprived him of the opportunity to defend his custody rights under a prior custody order.

Despite his claims, John has not been denied access to the courts. In regard to the question of parental rights, he was allowed to participate in the proceedings fully, including argument and evidence relating to his status as parent as well as the merits of the termination claims. The determination that John was not a parent under I.C. § 16-2002(11), leading to the magistrate's refusal to address the merits of the termination, does not mean that John was denied access to the courts. Indeed, the magistrate, as well as this Court, has entertained his equitable and constitutional claims on the merits. As to the parental rights claims, John confuses denial of

access to the courts with having failed to demonstrate a right cognizable in the instant proceeding.

Moreover, the existence of the prior custody order was presented to and considered by the magistrate relative to John's parental rights claims. The prior custody order did not render John a parent under I.C. § 16-2002(11) as relates to this termination proceeding. John was not denied access to the courts in regard to his ability to litigate the effect, if any, of the custody order relative to his parental status.

Finally, it appears that John contends that the *effect* of this matter--determination of parental status, termination of parental rights, and vesting custody in the Department--will deny him access to the courts relative to his ability to defend his custody rights. To the extent this argument is meant as a basis for standing to participate in the termination proceeding, as noted above, that access to the courts was provided. To the extent this argument is meant as a challenge to the effect of I.C. § 16-1604(2) on John's custody rights from the custody order entered in another proceeding, that claim is not properly before this Court. A copy of John's custody order is not included in the record on appeal. It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *Powell v. Sellers*, 130 Idaho 122, 127, 937 P.2d 434, 439 (Ct. App. 1997). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id.*

John also argues that the magistrate's decision deprived him of his fundamental right to parent, asserting that his relationship with Jane creates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. John contends that, because the magistrate awarded custody of Jane to the Department without allowing him to defend his liberty interest in court, he was deprived of his constitutional right to parent Jane. To determine whether an individual's due process rights under the Fourteenth Amendment have been violated, a court must engage in a two-step analysis. First, it must decide whether the individual's threatened interest is a liberty or property interest under the Fourteenth Amendment. *Schevers v. State*, 129 Idaho 573, 575, 930 P.2d 603, 605 (1996). Only if it finds a liberty or property interest will the court reach the next step, in which it determines the extent of due process procedural protections. *Id.*

The United States Supreme Court has long held that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning

7

the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65-67 (2000). In other words, the Court has recognized that parents hold a liberty interest in parenting their children. In *Pierce v. Society of Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 534-35 (1925), the Court held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." However, the Court has declined to find a liberty interest in parenting a foster child because the foster-parent relationship stems from state law, resulting in a more limited interest in the child. *Smith v. Org. of Foster Families for Equality and Reform*, 431 U.S. 816, 845-46 (1977). Further, courts have also held that the liberty interest of an unwed biological father will only be recognized when the father has developed a significant relationship with his child. *Lehr v. Robertson*, 463 U.S. 248, 261-62 (1983); *see also* I.C. § 16-1504(2); *Doe v. Roe*, 142 Idaho 202, 206-07, 127 P.3d 105, 109-10 (2005). Neither the United States Supreme Court nor any Idaho appellate court has addressed whether an unwed nonbiological male has a liberty interest in parenting a child who he assumed was his own.

This Court declines to recognize a liberty interest in this case. No jurisdiction has identified a liberty interest in a nonbiological person who is neither a legal guardian, adoptive parent, step-parent, blood relative, nor foster parent. Therefore, because John has failed to demonstrate that he possesses a liberty interest in parenting Jane, we cannot conclude that his constitutional right to parent has been violated.

## III.
## CONCLUSION

The magistrate did not err in its determination that John does not possess statutory or equitable parental rights subject to termination. In addition, John has failed to demonstrate that the magistrate's decision violated his constitutional rights. Accordingly, we affirm the magistrate's decree terminating the parental rights of Mother and Father to their daughter, Jane. No costs or fees are awarded on appeal.

Judge GUTIERREZ and Judge GRATTON, **CONCUR.**